THE BOARD OF SUPERVISORS OF THE COUNTY OF MONROE, Respondent, *v.* WILLIAM OTIS et al., Appellants.

Mere laches upon the part of an obligee or creditor, or non-performance of some act which might prevent loss to a surety, will not, in the absence of some express covenant or condition, discharge a surety. To be available to him as a defence, the neglect must be of some positive duty owing to him.

*Holl* v. *Hadley* (2 A. & E., 758); *Watts* v. *Shuttleworth* (5 H. & N., 235); *Moakley* v. *Riggs* (19 J. R., 69); *King* v. *Baldwin* (2 J. Ch., 554); *Hayden* v. *Agent* (1 Sandf. Ch., 195) distinguished.

So, also, the sureties upon an official bond are not discharged by an omission of duty by the obligee which is not owing directly to the sureties.

*People* v. *Jansen* (7 J. R., 332) considered as overruled.

The sureties upon the official bond of a county treasurer are not discharged from their obligation by any neglect, omission of duty, unfaithfulness or malfeasance on the part of the board of supervisors in their dealings with the principal in the bond.

The law, while it imposes upon the board the duty of examining the accounts of the treasurer, does not guarantee to the sureties the performance of that duty, or make the omission or negligent performance thereof ·a defence to an action upon the bond.

The board of supervisors and the county treasurer are alike agents of the county, and the acts or neglects of one agent cannot affect the liability of another, or of his sureties, to the common principal.

A county is not entitled to any allowance made by the State comptroller to the county treasurer as fees for receiving and paying over the State tax. The compensation is for services rendered by him for the State — the allowance is by competent authority, from a fund not belonging to the county, and over which it has no control, and the county has no right to the same either as originally belonging to it, or as received for its use.

The county therefore cannot open a settlement made by the comptroller with the treasurer and recover for the benefit of its treasury the fees allowed the latter, whether he was legally entitled thereto or not.

(Argued April 23, 1875 ; decided May 25, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was upon the official bond of Jason Baker, as treasurer of the county of Monroe.

Baker was elected county treasurer in 1857, and gave the bond in suit, which contained the following condition: " That if the said Jason Baker shall faithfully execute the duties of his said office, and shall pay according to law all moneys that shall come to his hands as such county treasurer, and shall render a just and true account thereof to the board of supervisors or to the comptroller of the State of New York, when thereto required, then this obligation shall be void," etc. The bond was duly approved and filed. Baker served through his term and was re-elected. The referee found, in substance, that at the annual meeting of the board of supervisors of the county in 1858, and at each succeeding annual meeting, the accounts of the treasurer, with his books and vouchers, were presented and referred, in pursuance of the usual practice, to a committee, who reported them correct; that no accounts were presented or allowed without a corresponding voucher, and that the business of the office demanded and had received the utmost care and attention; which reports were adopted by the board. That Baker retained each year one per cent of the State tax, with the assent of the State comptroller, as his fees or compensation for receiving and paying said tax. That the comptroller receipted for the entire tax, and that the entries upon the treasurer's book, and his report to the board, showed the payment of the whole of each tax without any deduction. That the board had not fixed the salary of the county treasurer, and that he charged and was allowed in each account one-half of one per cent on his receipts, and the like on his payments, including the State tax; and, as conclusion of law, he found that the moneys so received and retained of the State tax were the property of the county, and defend-

ants were liable therefor. The referee also found that Baker had misapplied and wrongfully appropriated various other items received by him as county treasurer, which items were not entered in his accounts as presented to the board, and, as conclusions of law, that the failure of the board of supervisors to discover the error in the treasurer's accounts, even if attributable to negligence, was not a defence to the action, and he directed judgment for the amount of said items, together with the commissions so retained on the State taxes, and judgment was entered accordingly.

*W. F. Cogswell* for the appellants. Plaintiff's laches and negligence in relation to the principal obligor on the bond, discharged defendants from all liability. (Theobald Prin. and Surety, 103–105; Pitman's Prin. and Surety, 85; *Hall* v. *Hadley*, 2 Ad. & El., 758; *Watts* v. *Shuttleworth*, 5 H. & N., 235; *Markley* v. *Riggs*, 19 J. R., 69; *Pearl* v. *Deacon*, 24 Beav., 186–191; *Craythorn* v. *Swinburne*, 14 Ves., 164–169; *Montague* v. *Tidcombe*, 2 Vern., 518; Fell on Guar., etc., 246; *Comm.* v. *Wolbert*, 6 Binn., 292–294; *Moore* v. *Paine*, 12 Wend., 123–126; *People* v. *Jansen*, 7 J. R., 332; *Peel* v. *Tatlock*, 1 B. & P., 422; *Taylor* v. *Bk. of Kentucky*, 2 J. J. Marsh, 564; *King* v. *Baldwin*, 2 J. Ch., 554–562; *Hayden* v. *Agent, etc.*, 1 Sandf. Ch., 195; *Governor, etc.*, v. *Beresford*, 6 Dow. P. Cas., 233, 238, 239; *Trent. Nav. Co.* v. *Harley*, 10 East, 34; *People* v. *Berner*, 13 J. R., 383; *People* v. *Russell*, 4 Wend., 570; *Albany D. Ch.* v. *Vedder*, 14 id., 165; 9 Wheat., 735.) Plaintiffs are estopped from making this claim against the defendants. (*Martin* v. *Angell*, 7 Barb., 407–409; *Strong* v. *Ellsworth*, 26 Vt., 366, 373; 6 A. & E., 469; *Preston* v. *Mann*, 25 Conn., 118; *Mitchell* v. *Reed*, 9 Cal., 204; *Walter's Appeal*, 35 Penn. St., 523; *Baker* v. *Briggs*, 8 Pick., 122; *Kingsley* v. *Vernon*, 4 Sandf., 361; *Goodin* v. *State of Ohio*, 18 Ohio, 6; Laws 1839, chap. 369, § 1.) Baker had a right to retain the one per cent paid to him by the comptroller as a part of his fees for collecting the State tax. (Laws 1855,

chap. 427, § 8; 1 R. S. [1st ed.], §§ 2, 3, 4, 8; 1 R. S., 370, § 26; Laws 1846, chap. 189; Laws 1849, chap. 162; 1 R. S. [1st ed.], 369, § 89; Laws. 1863, chap. 373, § 5; *People* v. *Devlin*, 33 N. Y., 269; *Suprs.* v. *Birdsall*, 4 Wend., 460.)

*Geo. F. Danforth* for the respondents. The bond in suit must be construed with reference to the situation of the parties, and the hazards against which plaintiffs are allowed by statute to exact security. (*Roch. City Bk.* v. *Elwood*, 21 N. Y., 88; *People* v. *Vilas*, 36 id., 459.) The statutory directions to the board of supervisors in respect to the county treasurer and his duties, form no part of the contract with the sureties. (1 R. S., 343, § 27, chap. 12, tit. 2, pt. 1; *People* v. *Russell*, 4 Wend., 570; *Looney* v. *Hughes*, 26 N. Y., 520.) If plaintiffs had been guilty of negligence and delay and laches in respect to Baker, this would not discharge the defendants. (*People* v. *Russell*, 4 Wend., 570; *Looney* v. *Hughes*, 26 N. Y., 520; *Remson* v. *Beekman*, 25 id., 552; *Schroeppel* v. *Shaw*, 3 Comst., 446; *Thompson* v. *Hall*, 45 Barb., 214.) The approval of the treasurer's accounts, at the annual accounting, created no estoppel in favor of defendants. (*Suprs. of Livingston* v. *White*, 30 Barb., 72; *Lexington, etc.*, v. *Elwell, etc.*, 8 Al., 371.) The sureties are bound by the entries of the principal, or of his clerk, in the official books. (1 Gr. Ev., §§ 115, 116, 147, 150; 10 B. & C., 317; E. C. L., 84; 1 Smith's L. C., 139; 2 id., 195; *Brewster* v. *Doane*, 2 Hill, 537.) The sureties are liable, although Baker's official term was extended. (15 Grat., 1; 7 E. & B., 497; 36 Miss., 491.) The bond first given covers the whole term, although a new one was also given. (6 Jones L. R., 62.) The sureties are liable for interest from the time when Baker failed to make proper entries, or omitted to account, and for infant funds. (*Suprs. Chenango* v. *Birdsall*, 4 Wend., 453; 9 J. R., 71; *People* v. *Gasherie*, 17 Cal., 504; 6 Jones L. R., 62.) Frauds practiced by the treasurer, as indicated by incorrect entries in his books, entitled plaintiffs to have the entire account opened and readjusted. (*Barron* v. *Rhine-*

*lander*, 1 J. Ch., 550, 555–557; *Vernon* v. *Wawdry*, 2 Atk., 119; *Piddock* v. *Brown*, 3 P. Wms., 288; 2 Barb., 586; 1 Story's Eq. Jur., §§ 523–529.)

ALLEN, J.  There was no condition, expressed or implied, in the law or in the bond affecting the liability of the appellants as the sureties for Baker, the county treasurer, that the board of supervisors should periodically examine the accounts of the treasurer, or watch over his transactions. The sureties are not discharged from their obligation by reason of any neglect or omission of duty by the board of supervisors, or any unfaithfulness or even malfeasance on their part in their dealings with the principal in the bond. The condition of the bond is that the treasurer shall pay, according to law, all moneys that shall come to his hands as such county treasurer, and shall render a full and true account thereof, etc.  If this condition has been broken the bond is forfeited, and the sureties are held, notwithstanding the board of supervisors or other agents of the county may have been wanting in the performance of some duty imposed upon them, or have been negligent and careless in the performance of such duty.  The board of supervisors and the county treasurer were alike the agents of the county as a body politic and corporate, and the acts and neglects of one agent cannot affect or detract from the liability of another agent, or of the sureties of either to the common principal. The board of supervisors owed no duty to the defendants, the appellants.  The law, while it imposes upon the supervisors the duty of examining the accounts of county treasurers, does not guarantee to the sureties the performance of that duty, or make the omission or negligent performance of it available to the sureties as a release from their obligations, or a defence to an action upon the bond of their suretyship.  Judge GARDINER, the learned referee in this case, suggests what seems to be the true rule as between sureties and obligees, that mere passive negligence or laches of an obligee or creditor, mere non-performance of some affirma-

tive act which if performed might prevent loss to the surety, will not, in the absence of some express covenant or condition to that effect, discharge a surety, and that the neglect of duty which is available as a defence for a surety must be of some duty owing to the surety, and not to others ; some positive duty undertaken in behalf of and for the benefit of the surety. The learned referee distinguishes this case from *Montague* v. *Tidcombe* (2 Vern., 518), in which the principal had, in terms, covenanted with the surety to make up the cash account of the appointee for whom the defendant was surety, each month, and other cases standing on the same principle.

The rule contended for by the counsel for the defendants is in accord with the principle upon which the referee proceeded in giving judgment in this action. He refers to Theobald on Principal and Surety (103, 105), for the general proposition that the neglect of the creditor to perform, or a defective performance of any of the conditions, express or implied, which are incumbent upon him, or of any of the terms which collectively form the consideration either of the surety's contract, or the contract guaranteed, discharges the surety. The case cited in support of the rule (*Holl* v. *Hadley*, 2 A. & E., 758), is an apt illustration of it. The defendant's testator was a guarantor for the value of coals to be supplied to one N. H., on condition that no application should be made to the surety for payment, but on failure of the " utmost efforts and legal proceedings " of the plaintiffs to obtain payment from N. H. This agreement was by the court deemed to have been incorporated into a subsequent agreement between the parties, and for a neglect by the plaintiffs to perform it, the surety was held discharged. *Watts* v. *Shuttleworth* (5 H. & N., 235), applied the same principle to a failure of the obligee to insure the property to which the suretyship related, as by the terms of the contract with the principal obligor he had agreed to do, the surety having notice of this agreement, and being told, when he became surety, that he incurred no risk, in consequence of the stipu-

lation to insure.   Ch. B. POLLOCK, says the rule seems to be, that if the person guaranteed does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act which his duty requires him to do, and the omission proves injurious to the surety, the latter will be discharged. A duty to the surety in that case rested upon the contract, and all that is said of the effect of an omission of duty, must be referred to duties resting upon that foundation, and owing to the surety.

*Moakley* v. *Riggs* (19 J. R., 69), was an action on a collateral undertaking that a note was collectable after due course of law, and it was held that due diligence in the prosecution of the maker was the condition upon the observance of which the guarantor consented to be answerable.

*King* v. *Baldwin* (2 J. Ch., 554), was the case of giving time to the principal without the assent of the surety.

In *Hayden* v. *Agent of Auburn State Prison* (1 Sandf. Ch., 195), a levy upon property of the principal debtor, sufficient to satisfy the judgment and execution, had been released by the agent of the State, and the surety was held discharged by such act, the court properly holding that the consequences of such interference should be borne by the State.   The agent of the prison represented the State, and had given security for the faithful performance of his duties.   But as the authorized attorney of the State, his acts bound the State.   *The Governor of the Bank of Ireland* v. *Beresford* (6 Dows. Parl. Cas.), was in principle like *King* v. *Baldwin* (*supra*).   All the cases are distinguishable from this case, which is more like *Trent Nav. Co.* v. *Harley* (10 East, 34), in which it was held, that the laches of the obligee in not calling upon the principal obligor to render his accounts for a series of years did not work an estoppel against the sureties, or discharge them from the obligation.

It was held by this court in *McKechnie* v. *Ward*,* decided in October, 1874, following an unbroken current of authority, that a surety was not discharged by mere non-action of the

*58 N. Y., 341.

creditor, or his omission to take measures for the collection of the debt from the principal. In strict analogy with this rule is that which may now be regarded as well established upon authority, and as standing upon the same principle, viz., that sureties upon official bonds are not discharged by omission of duty or non-action by the obligees, or by the non-performance of any duty which is not owing directly to the surety. *People* v. *Jansen* (7 J. R., 332), may be distinguished from the present case in important particulars. But the principle there decided may be regarded, I think, as substantially overruled, and it is certainly overruled in so far as it could be held applicable to this case. I prefer to regard it as no longer evidence of the law, than to rely upon the distinction between it and the case at bar. (*People* v. *Russell*, 4 Wend., 570; *Albany Dutch Church* v. *Vedder*, 14 id., 165; *Looney* v. *Hughes*, 26 N. Y., 514.)

In *Jones* v. *United States* (18 Wallace, 662), it was decided that in a suit by the government against the sureties of a postmaster on his official bond, it was no defence that the government, through their agent, the auditor of the treasury of the post-office department, had full notice of the defalcation and embezzlement of funds of the plaintiff before this, and yet neglectfully permitted the said postmaster to remain in office, whereby he was enabled to commit all the default and embezzlement, etc. The court regarded it so well settled that the facts pleaded did not constitute any defence to the action, that it was not deemed necessary to enter into any discussion. The reporter, in a foot-note, refers to *U. S.* v. *Vanzandt* (11 Wheaton, 184); *Bank of U. S.* v. *Dardridge* (12 id., 64); *Dox* v. *Postmaster-General* (1 Peters, 318); *U. S.* v. *Boyd* (15 id., 187).

There is no good reason why the public, having exacted security from one official for the faithful discharge of his duties, should be held by implication to have guaranteed to those sureties the faithful discharge, by other public agents and officials, of other duties having an incidental or collateral relation to the duties of the principal. The argument of the

referee is unanswerable, and his ruling upon the allegations of negligence by the board of supervisors in the examination of the accounts of the treasurer, as a defence to the action, must be sustained. The facts alleged and proved constituted no defence to the action.

There are none of the elements of an equitable estoppel available to the sureties in this action. The defendants did not become sureties relying upon any act or declaration of the board of supervisors, neither did that body during the continuance of the suretyship do any act or make any declaration or promulgate any fact designed to or calculated to influence the action of the sureties. The only acts and transactions were with the treasurer, and in the performance of a duty owing to and for the benefit of the county. There was no evidence that the board believed, or had reason to believe, that the defendants would do or forbear to do any thing in reliance upon the result of their examinations and doings. There is nothing against equity and good conscience in the enforcement of the obligation of the sureties by the county, by reason of the alleged action of the board of supervisors. Equitable estoppels are applied for the prevention of fraud, and are ordinarily based upon some action or declaration of a party intended to influence the action of others, and which it would be inequitable to allow to be gainsaid or controverted, because acted upon, and loss would ensue if a different position should be taken. (*Baker* v. *Briggs*, 8 Pick., 122; *Pickard* v. *Sears*, 6 A. & E., 469; *Plumb* v. *Cattaraugus Co. Mut. Ins. Co.*, 18 N. Y., 392.)

The defendants except to the allowance of three items, amounting, with interest, to something more than $3,000. They are the amounts allowed him by the State comptroller, in the years 1858, 1859 and 1860, as and for his fees of one per cent for receiving and paying into the State treasury the State tax. It was an allowance by the State for a service to the State, and as a fee or commission earned by and due to the county treasurer, and was deducted from the tax due and payable to the State and collected for its use. No deduction

was due the county from the State, and it was not entitled to any compensation or commission from the State for the service.  The burdens of the county were not increased by its retention by the treasurer, and would not have been diminished by the payment of the same into the treasury, except in common with every other county, and as all are interested in the general funds of the State.  It was allowed by competent authority from a fund not belonging to the county and over which it had no control, and in which it had no special or peculiar interest, except as this tax, until paid into the treasury, was a charge against the county.  To this extent the county treasurer was the agent of the county, for whose acts and omissions the county was responsible to the State, but the compensation was for the official service of the treasurer rendered the State.  I should find great difficulty in agreeing to the opinion of Judge T. H. JOHNSON, in *Board of Supervisors of Livingston County* v. *Norton*, cited by the counsel for the respondents.  It is true that there is great confusion and apparent inconsistencies and incongruity in the laws enacted from time to time, regulating the fees of county treasurers, and there was, at the time of these transactions, great embarrassment in administering the laws in that respect, by reason of doubts as to what the law really was.  But the fact still remains, that the question was as to the fees due to the county treasurer from the State.  There never was any claim that the county had any right to any part of the sum raised for the State tax upon any pretext.

Whatever may be the true interpretation of the acts regulating the fees of county treasurers, or the strict legal rights of that officer to claim from and receive from the State, any compensation for the collection and payment of the State tax, the statutes have had a uniform practical construction, by the administrative officers of the State, and the settlements with and allowance to the principal of these defendants, by the State comptroller, was in strict conformity with such construction and the usage of the department.  In other

words, the county treasurer only received what, by the sanction and authority of the State officers, to whom he was bound as well by his bond as the law to account, he was legally authorized to receive and retain. He has accounted with the comptroller for the State tax, and paid over all that was claimed by the State to be its due, retaining the balance as his compensation for the service. He has complied with the condition of his official bond in this respect. The obligation of the county to the State was fully discharged. The county treasurer had fully accounted to the State for the State tax, and owed no further duty to it, and the county cannot open the settlement with the comptroller, annul the discharge of that officer, and claim and receive as its own that part of the State tax to which the State made no claim, but yielded to the treasurer under his claim as and for his commission. Had he paid the full amount into the State treasury, and the comptroller had subsequently audited his claim for compensation, and drawn his warrant upon the State treasurer for the amount, it would not be claimed that the county could review the action of the comptroller, and claim the benefit of the sum paid by the State, as paid without authority of law, and the case, as now presented, is not different in principle. The treasurer received and retained the amount under a claim of right, and not as the agent of or for the use of the county, and the county has no right to the same, either as originally belonging to it, or as received to its use.

It has not been thought either useful or necessary to go over the statutes to determine the strict right of the treasurer to demand and receive the fees claimed and allowed him, as that involved a transaction between him and the State, to which the county was not a party, and from which it can derive no benefit. It cannot recover for the benefit of its treasury the amount erroneously paid or permitted to be withheld from the State treasury. It has lost nothing by the error of the comptroller, if, in truth, the commission was erroneously allowed and paid. The learned referee relied

for his ruling upon this item upon the decision before referred to, of Judge JOHNSON, which he says he must regard as authoritative and binding upon him, sitting as a referee in the same court.

There was evidence to sustain the other items for which a recovery was had, and it is referred to at length in the opinion of the referee, and need not be more particularly referred to.

The judgment must be reversed and a new trial granted, costs to abide event, unless the plaintiffs stipulate to reduce the recovery and judgment, by deducting therefrom the three items before referred to, amounting, with interest, as included in the report of the referee, to the sum of $3,115.82, and if they so stipulate, the judgment as thus modified must be affirmed, but without costs to either party in this court.

All concur; CHURCH, Ch. J., not sitting.

Judgment accordingly.