### THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK v. JOHN W. STOUT ET AL.

1. To an action on a bond a plea that the cause of action did not accrue within six years before suit is bad. Bonds are contracts by specialty, and are excluded from the section of the Limitation act which prescribes six years as the period of limitation of actions.
2. A plea that the defendant became a bankrupt, within the intent and meaning of the Bankrupt act after the cause of action accrued is bad. A discharge granted by the federal court in bankruptcy proceedings is necessary.
3. Sureties contract for the conduct of their principal. This contract is not discharged or released by mere laches unaccompanied by fraud.
4. Mere negligence or passive inactivity, such as neglect to call the principal to an account in a reasonable time, or to enforce payment by him, or want of care in examining accounts presented, will not discharge the surety.
5. To discharge a surety from his contract there must be some positive act done by the plaintiff to the prejudice of the surety, such as the surrender of a security, or giving the principal time by a valid and binding agreement, or such a degree of negligence as to imply connivance amounting to fraud.
6. A master having a guaranty for the honesty of a servant, or the faithful performance of his duty, having discovered his dishonesty in the course of the service, must discharge the servant, or at least notify the surety of the fact of dishonesty, or he will take upon himself responsibility for losses arising from the servant's dishonesty during the subsequent service—concealment of known dishonesty of the servant being regarded as a fraud.
7. Power conferred upon a city by certain of its officers to investigate the accounts of its financial agents confers no greater authority than a private individual has in the management of his business. Neglect of the city officers in the examination of accounts, though it be imputable

to the city and be a breach of official duty, will not avail the sureties on an official bond to discharge their obligation.

8. Statutes, by-laws and ordinances making it the duty of certain city officers to supervise the conduct or accounts of other city officials, and even to remove defaulting officers, are designed for the security and protection of the city, and not for the benefit of sureties on official bonds. They form no part of the contract with the sureties, and laches in not performing the duty so enjoined will not discharge the sureties.

9. The officers of a corporation are agents of a common principal, and the acts and neglects of one agent cannot affect or detract from the liability of another agent or his sureties to the common principal.

10. The court will take judicial notice of the provisions of public acts as if their provisions had been set out in the pleadings; but in order to bring a case within the operation of a public act, the pleading must set forth facts in a traversable form which will bring the case within the purview of the statute.

11. The city charter provided that certain officers, including the city treasurer, should be appointed from time to time by the common council, and that every person who should be appointed to any office under the provisions of the charter should continue in office until the office for which he should be appointed should be declared vacant, or until another person should be appointed to succeed him and should enter upon the duties of his office; and that the city treasurer should, before entering on the duties of his office, give bond, with sureties, for the faithful performance of his duties. S. was appointed treasurer in January, 1867, and continued in office until January, 1875. He gave bond in January, 1867, with sureties, in conformity with the city charter. In an action on this official bond the sureties pleaded that, by the charter and by the rules and usages of the common council, all the officers appointed by the common council, including the city treasurer, were appointed for one year, subject to removal at pleasure, and when not re-appointed at the expiration of the term were suffered to hold over at pleasure; and that the defendants executed the said bond as sureties with a knowledge of the said rules and usages of the common council, and on assurances and representations made on behalf and by authority of the common council and of the plaintiffs, that they would be bound as such only for the term of one year. *Held*, that this plea presented no defence.

12. The sureties also pleaded that after one or more of the breaches alleged, to wit, on January 1st, 1870, the plaintiffs, by the finance committee of the city and the auditor of accounts, had knowledge of the fact that the treasurer was deficient in his accounts for the year 1869, and that there was an illegal shortage in his accounts, for which cause the said mayor and common council of the said city, or said finance committee, or some of them, should have dismissed the treasurer from the employ of the city, and by virtue of the fact that the said the mayor and common

council did not dismiss, but did retain the said treasurer, and did not make public the·fact of previously ascertained delinquencies, or inform his sureties thereof, the defendants were released and discharged of and from liability under their bond for the breach of the conditions thereof by the treasurer, after knowledge of such ascertained delinquencies, &c.  *Held—*

(1) That neither the finance committee nor the auditor represented the city in this respect, and their failure to report to the common council the illegal conduct of the treasurer was the neglect of other officers which will not exonerate the sureties on the treasurer's bond.

(2) That the plea commencing *actio non* and concluding with a prayer for judgment if the plaintiffs ought to have or maintain their action, and the substantial averments going only to a partial defence to the action, is for that reason bad.  Every plea pleaded in bar to the whole action must contain such averments as, if true, will defeat the action.

13. The sureties also pleaded that, by a city ordinance, it was made the duty of the mayor to supervise the conduct in office of the treasurer, and in case of violation or neglect of duty, or misconduct of the treasurer, to transmit information thereof to the common council; and in order to the performance of the duty so enjoined upon the mayor, he was, by the ordinance, invested with full power, at all times, to examine all books and papers in the possession or custody of the treasurer ; and that, by law, it was also the duty of the said common council to supervise and examine into the conduct in office of the treasurer, and to remove or supersede him in case of any neglect or violation of his duty as such officer; and that the defendants became sureties in view of the said law and ordinance, and relying on the protection that would be afforded to them as such sureties by the due enforcement thereof and of the faithful discharge of the said duty enjoined thereby ; and that the said mayor and the said common coun-·cil, and each of them, did neglect and refuse to perform the duty so required of them respectively, and by their neglect and disregard of ·duty, and otherwise, knowingly suffered, encouraged and induced the breaches, &c.  *Held—*

(1) That the averment that by law it was the duty of the common council to supervise and examine into the conduct in office of the treasurer, and to remove or supersede him in case of any neglect or violation of his duty as such officer, was insufficient.  The pleading must set out the facts from which the duty arises, and is bad in substance if the duty does not result from the facts stated.

(2) That the utmost that could be said of the duty of the common council, under the city charter, was that, upon report being made to it by the mayor of the treasurer's neglect or violation of duty, or mis-·conduct in office, it was the duty of that body to investigate the charges, and if it should be found on such investigation that the treasurer had ·been guilty of malversation in office, then to remove him.

(3) If it be assumed that it was the duty of the common council to exercise its power to remove the officer for the protection of his sureties, the duty to discharge the official would arise, and the non-performance of it be a defence to the sureties only after knowledge of the officer's dishonesty was brought home to the common council.

(4) That on the substantial averments in this plea defence was made on the neglect of duty by the mayor, and his neglect of duty is no defence.

14. A plea by the sureties that the city contriving and intending to injure the defendants by willfully neglecting to examine the treasurer's accounts annually, and otherwise permitted, encouraged and induced, and were privy to the alleged breaches, &c., sustained on the authority of *Mayor, &c., of Newark* v. *Dickerson*, 16 *Vroom* 38.

On demurrer to pleas.

This suit was brought against Stout and his sureties upon his official bond as city treasurer of Newark. The condition of the bond is, that Stout should "truly and faithfully perform all the duties enjoined on him as city treasurer of the city of Newark."

Stout was appointed treasurer in January, 1867, and continued in office until January 15th, 1875. The bond is dated January 11th, 1867, and was made and executed in conformity with the city charter. The declaration avers that it was the duty of Stout, as city treasurer, to keep accurate and complete records of all moneys paid into his hands, as treasurer, for the use of said city, in books provided for that purpose, and to account for all moneys received by him, and to pay out said moneys only by the order and direction of the said the mayor and common council of the city of Newark. This averment of the duties of city treasurer complies with the provisions of the charter. The breaches assigned are : (1) That Stout did not keep accurate and complete books of account; (2) that he did not account for all the moneys received by him ; (3) that he appropriated a large amount of the city's money to his own use ; (4) that he paid out large sums of money without the order, direction or consent of the city.

Pleas were filed by the sureties, who appeared separately. To several of these pleas the plaintiff filed separate demurrers.

Argued at June Term, 1889, before BEASLEY, CHIEF JUS-
TICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the demurrant, *Jos. Coult.*

Contra, *J. W. Taylor* and *J. Frank Fort.*

The opinion of the court was delivered by

DEPUE, J.  The plea of the statute of limitations, that
the causes of action in the declaration mentioned did not
accrue within six years before suit brought, is clearly bad.
The section of the Limitation act which prescribes six years as
the period of limitation of actions, applies only to contracts
"without specialty."  Bonds are contracts by deed or specialty,
and are excluded from the operation of this section.  *Ang.
Lim.,* § 88.

The plea filed by one of the defendants, that he became a
bankrupt within the true intent and meaning of the act of
congress concerning bankrupts after the cause of action ac-
crued, is also bad.  Neither the fact of bankruptcy nor an
adjudication of bankruptcy will discharge a debtor.  A dis-
charge in bankruptcy granted by the federal court in the
bankruptcy proceedings is necessary to that end.

The other pleas are founded upon provisions of the city
charter and the supplements thereto.  The original charter
is expressly made a public act (*Pamph. L.* 1857, *p.* 116), and
supplements thereto become public acts, though not made such
in express words.  *Stephens and Condit Trans. Co.* v. *New
Jersey Central R. R. Co.,* 4 *Vroom* 229 ; *State* v. *Bergen,* 5 *Id.*
438.  The court will therefore take judicial notice of the pro-
visions of these public acts as if their provisions had been set
out in the pleadings.  But in order to bring a case within the
operation of a public act, the pleading must set forth facts in
a traversable form which will bring the case within the pur-
view of the statute.

The pleas making defence under the city charter will be
examined without indicating by which of the defendants

they were pleaded, or observing the order in which they stand upon the record.

*First.* The defendants plead *actio non* because, by the provisions of the city charter, the tenure of office of the city treasurer was only during the pleasure of the common council, and that by the charter and by the rules and usages of the common council, from the date of the passage of the charter, all the officers so appointed by the common council (including the city treasurer) were appointed for one year (subject to removal at pleasure), and at the time of the election of its president and other officers, pursuant to section 26 of said act, and when not re-appointed at the expiration of the term, were suffered to hold over during pleasure; and that the defendants executed the said bond as sureties with a knowledge of the said rules and usages of the common council, and with the understanding and on assurances and representations made on behalf and by authority of the common council and of the plaintiffs, that they would be bound as such only for the term of one year.

Section 21 of the charter, which authorizes the common council to appoint officers, enacts "that the common council shall from time to time appoint, by a majority of the whole number of members of said common council, a city clerk, city treasurer," &c., and expressly provides that every person who shall be appointed to any office under the provisions of the act, "shall continue in office until the office for which he shall have been appointed shall be declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office."

The power granted to the common council is to appoint these officers at the pleasure of the appointing body, but the officer, when appointed, holds for an indefinite term, which shall continue until the office is declared vacant, or until a successor is appointed and enters upon the duties of the office. The legislature having prescribed the tenure of office, the common council had, neither by rules or usage, nor even by ordinance, power to fix or alter the term of the office.    The

provisions of the charter as to time and mode of election, the appointment, qualifications and duration of the terms of officers must be strictly observed. Therefore, an ordinance which makes eligible those who, by the charter, are not so, or which abridges the term of officers as fixed by the charter, is unauthorized and void. 1 *Dill. Mun. Corp.*, § 141.

Section 26 authorizes the common council " to determine the rules of its own proceedings," but nowhere in the charter is power given to that body to fix, change or interfere with the terms of office of its officers, except the power conferred by section 21 to declare an office vacant or to determine it by the appointment of a successor. The plea contains no direct averment that Stout was, in fact, appointed for a year. If the appointment had been made for such a term, he would, nevertheless, have continued in office in virtue of the statute until his office was declared vacant or a successor was appointed and assumed office, and his official bond would have remained in force during his continuance in office. In *Amherst Bank* v. *Root,* 2 *Metc.* 522, the suit was on a cashier's bond. By the statute, it was provided that the directors of a bank should have power to appoint a cashier, clerks and other officers, and that such cashiers, clerks and other officers should retain their places until removed therefrom or others were appointed in their stead. The statute also provided that the cashier should give bond, with sureties, conditioned for the faithful performance of the duties of his office. The cashier was appointed in 1831, and gave bond with condition in conformity with the statute. In 1832 he was re-appointed, but gave no new bond. In 1836 and 1837 he became a defaulter, and it was held that the sureties were liable for these defalcations, although it appeared from the records of the board of directors that in 1831, and also in 1832, the cashier was appointed " for the year ensuing." In pronouncing the judgment of the court, Chief Justice Shaw, speaking of the statute, said : " This provision regulates the office of cashiers, and fixes the tenure by which it is held. It does not prescribe the time for which it is to be held, but whether for a

fixed or an unlimited time, they are to hold until another is appointed. If the cashier is to hold the office, he is to do the duties, and they are official duties; and therefore a bond that he shall faithfully perform the duties of cashier will include duties performed after the limited time for which he is chosen, and during the time that the office is continued by force and operation of law." Speaking of the condition of the bond, the Chief Justice said: "The words are general, and the defendants seek to show that they ought to be limited to a certain time. There is no recital, and the office itself is not annual. But it is said, that in the particular case the election was for the year ensuing. To that it was ·answered, that though the election was for the ensuing year, yet the law made it a continuing office, until another was chosen in his place; and no other was chosen till after the breaches assigned. And we think this answer is satisfactory." In the plea under examination there is no averment of any official action by the common council tending to limit the term of the treasurer's appointment. Nothing appears on that subject on the record except Stout's appointment as treasurer, his official bond conditioned for the faithful performance of the duties of his office, and his defalcations while he continued to hold office. On such averments it is entirely clear that the contract of the sureties applies to and embraces these defalcations. *Richardson School Fund* v. *Dean,* 130 *Mass.* 242, 244; *Commonwealth* v. *Reading Savings Bank,* 129 *Id.* 73; *Curling* v. *Chalken,* 3 *Mau. & Sel.* 502; *DeCol. Guar.* 231.

Nor is the averment of any avail that these parties became sureties with knowledge of such rules and usage of the common council, and with the understanding and on assurances made on behalf of and by authority of the common council and of said plaintiffs that they would be bound as sureties only for one year. The powers of the common council, the mode in which that department of the city is required to exercise its functions, the tenure of office of officers appointed by it, and the manner in which their official terms may be determined, are fixed by a public law. The charter being a

public act, the defendants are charged with knowledge of the limited powers of the common council and the prescribed tenure of office of the officer for whose official conduct they undertook to be responsible.

The effort in this plea is to change the legal effect of the bond by extraneous matter. The statute is clear and explicit. The condition of the bond is unambiguous, and the contract expressed in it is not susceptible of modification by usage, representation or any matter *in pais*. This plea discloses no defence.

*Second.* Plea *actio non*, &c., because subsequently and after one or more of the breaches alleged had occurred, to wit, on or about January 1st, 1870, the plaintiffs, by their finance committee and their auditor of accounts, examined the accounts and cash of the treasurer and verified and approved the same, and approved and endorsed the entries made by him in his books of account, which entries are now claimed by said plaintiffs to have been wrongfully or fraudulently made, but all of which entries were at that time and then and there ratified and approved by the finance committee and the auditor; that the accounts of the treasurer showing the cash balance in his hands were also examined by the finance committee, and found and certified by the committee to be correct in every particular, and that the finance committee so certified and reported to the common council, and that upon said report the common council did ratify and confirm the action of the finance committee, and did pass and approve the accounts of the treasurer and all the entries therein, and sanctioned said action of said treasurer up to that time, of whatsoever nature said action may have been, by virtue whereof the defendants, as sureties on the bond of the treasurer, were from and after said last mentioned date freed and released from all liability upon said writing obligatory and the condition thereunder written for any delinquency of said city treasurer.

Following this plea is another setting out that previous to the breaches in the declaration alleged to have occurred on or

after January 1st, 1870, the plaintiffs, by the finance committee of the city and the auditor of accounts, were aware and had knowledge of the fact that the treasurer was, on the 1st day of January, 1870, deficient in his accounts for the year 1869, and that there existed an illegal shortage in his accounts, for which cause the said mayor and common council of the city of Newark, or said finance committee, or some of them, should have dismissed the treasurer from the employ of the city, and by virtue of the fact that the said the mayor and common council did not so dismiss, but did retain the said treasurer after such knowledge of previously ascertained delinquencies, and did not make public the fact of previously ascertained delinquencies or inform his sureties thereof, the defendants were and now are freed, released and discharged of and from all obligation or liability to the said The Mayor and Common Council of the City of Newark arising under and by virtue of their bond, or out of the breach of the condition thereof by the treasurer as aforesaid, after such knowledge of such ascertained delinquencies on the part of the said plaintiffs.

The first of these two pleas is so manifestly insufficient that no extended discussion is necessary. There is no averment in it of knowledge on the part either of the finance committee, the auditor of accounts or the common council, of the fraudulent or dishonest conduct of the treasurer. In the simplest case in which ratification can acquire any legal significance or effect, knowledge of the wrongful act is essential. Ratification without knowledge of the infirmity of the act to be cured by the ratification, is a nugatory thing. In *State Bank* v. *Chetwood*, 3 *Halst.* 1, which was relied on to sustain this plea, it was set out in the notices that the bank ratified the acts of the cashier after full knowledge of the circumstances.

In the second of these two pleas, it is averred that the finance committee and the auditor had knowledge of the illegal shortage in the treasurer's accounts. But there is no averment that the common council, which alone had power to remove the officer, had knowledge of the treasurer's misconduct.

Neither the finance committee nor the auditor represented the city in this respect. Their failure to report to the common council the illegal conduct of the treasurer, was at most only the neglect of other officers, which, as will presently be shown, will not exonerate the sureties on his bond.

These pleas are bad, also, in another respect. They each commence *actio non*, and conclude with a prayer of judgment if the plaintiffs ought to have or maintain their action, and the substantial averments in each go only to a partial defence to the action. Every plea pleaded in bar to the whole action must contain such averments as that, if true, will entirely defeat the action. *Lord* v. *Brookfield,* 8 *Vroom* 552 ; *Grafflin* v. *Jackson,* 11 *Id.* 440. These pleas by inadvertence seem to be directed to the bill of particulars, which is no part of the declaration, instead of to the declaration itself. Neither plea is a complete answer to any of the breaches assigned. On both the grounds mentioned, these pleas are bad.

*Third.* The defendants also plead *actio non*, because there did occur in the office of the receiver of taxes, in the additions and remissions of taxes, and the discounts allowed thereon, errors, discrepancies and improper entries, whereby statements handed to the treasurer, as required by law, were made to appear as if more money had been deposited by the receiver of taxes to the credit of the treasurer in the banks in which the plaintiffs kept their accounts, than was actually deposited, and that subsequently such errors and omissions were discovered by the receiver of taxes and the auditor of accounts, and to adjust and account for said errors with which the treasurer had been wrongfully charged, they did, under the direction of the auditor of accounts, the receiver of taxes and the finance committee, enter upon the books of the treasurer the said entries which it is claimed in the plaintiffs' declaration are breaches in the bond of the treasurer, whereas said entries were lawfully and properly entered, and the treasurer is not chargeable with said sums of money which, by the errors and omissions as aforesaid, had been wrongfully charged against him.

The breach assigned in the declaration is, that the treasurer did not keep accurate and complete records of all moneys paid into his hands, and did not account for all moneys received by him. This plea is objectionable in that it puts in the form of a plea the evidence to sustain a traverse of the breach assigned. But this objection can be made available only on a motion to strike out. On demurrer, the plea must be sustained as a traverse. The defect is not in the matter pleaded, but in the manner of pleading it, and is therefore only a fault in form.

*Fourth.* The defendants plead *actio non* because they say that by law, as well as by section 2 of an ordinance entitled "An ordinance in relation to the mayor," it was made the duty of the mayor to supervise the conduct in office of the treasurer; and in case of violation or neglect of duty or misconduct of the treasurer, to transmit information thereof to the common council; and in order to the performance of the duty so enjoined upon the mayor, he was, by the said ordinance, invested with full power at all times to examine all books and papers in the possession or custody of the treasurer, and that by law it was also the duty of the said common council to supervise and examine into the conduct in office of the treasurer, and to remove or supersede him in case of any neglect or violation of his duty as such officer; and that they became sureties on the said writing obligatory in view of the said law and ordinance, and relying on the protection that would be afforded to them as such sureties by the due enforcement thereof, and of the faithful discharge of the said duty so enjoined thereby; but that not only did the said mayor and the said common council and each of them wholly neglect and refuse to perform the duty so required of them respectively in this behalf, but, by their said neglect and disregard of duty, and otherwise, knowingly suffered, encouraged and induced the breaches, &c.

Parties entering into a contract of suretyship contract for the conduct of their principal. This contract is not discharged or released by mere laches, unaccompanied by fraud. *Morris Canal* v. *Van Vorst*, 1 *Zab.* 100. A master having a guar-

anty for the honesty of a servant or the faithful performance of his duty, having discovered his dishonesty in the course of the service, must discharge the servant, or at least notify the surety of the fact of dishonesty, or he will take upon himself responsibility for losses arising from the servant's dishonesty during his subsequent service—concealment of known dishonesty of the servant being regarded as a fraud. *Phillips* v. *Foxall, L. R.,* 7 *Q. B.* 666 ; *Sanderson* v. *Aston, L. R.,* 8 *Exch.* 73 ; 2 *Lead. Cas. Eq.* (6*th ed.*) 1124, 1125. But mere negligence, mere passive inactivity, such as the neglect to call the principal to an account in a reasonable time or to enforce payment by him, or a want of care in examining accounts presented, will not discharge the surety. The surety guarantees the honesty of the person employed, and is not entitled to be relieved from his obligation because the employer fails to use all the means in his power to guard against the consequences of dishonesty. Hence, a plea by the surety in an action on his bond, that the plaintiff was guilty of negligence and want of due care in checking and properly examining the account of the principal, and that the surety was thereby released and discharged, is not a good plea. To discharge a surety from his contract there must be some positive act done by the plaintiff to the prejudice of the surety, such as the surrender of a security or giving the principal time by a valid and binding agreement, or such a degree of negligence as to imply connivance amounting to fraud. *Trent Nav. Co.* v. *Harley,* 10 *East* 34 ; *Mactaggart* v. *Watson,* 3 *Cl. & F.* 525 ; *Black* v. *Ottoman Bank,* 8 *Jur., N. S.,* 801 ; *Dawson* v. *Lawson,* 1 *Kay* 280 ; *Creighton* v. *Rankin,* 7 *Cl. & F.* 325, 346 ; *Guardians, &c.,* v. *Wright,* 9 *Q. B. Div.* 683 ; *Pintard* v. *Davis,* 1 *Zab.* 632, 634 ; *McKenzie* v. *Ward,* 58 *N. Y.* 541 ; *Board of Supervisors* v. *Otis,* 62 *Id.* 88 ; *Atlantic and Pacific Tel. Co.* v. *Barnes,* 64 *Id.* 385.

These principles, regulating the duties and obligations of guarantor and guarantee, are well settled. They have been repeatedly applied to bonds for the faithful performance of duty by municipal officers. On principles of law prevailing

in transactions of this kind, the neglect set up in this plea
would afford no defence.    To make the defence available in
this case, some statute or positive law must be made to appear
creating a duty and imposing an obligation upon the city
which by the general law does not prevail in the relation of
guarantor and guarantee when the latter is an individual.
Municipal corporations must act by the instrumentalities of
their officers.    Power conferred upon the city by the instru-
mentality of certain of its officers to investigate the accounts
of its financial agents confers no greater authority than a
private individual possesses in the management of his business
in examining the accounts of his financial agents.    Neglect to
exercise that authority, or negligence in the examination of
such accounts, would carry no greater responsibility in the
case of the city than it would in the case of a private individ-
ual holding such a contract of indemnity.    Mere neglect of
the city officers in the examination of accounts; though it be
imputable to the city and be a breach of official duty, will not
avail the sureties on an official bond to discharge their obliga-
tions.    The neglect which this court repudiated as a defence
to sureties on the bond of the cashier in *Morris Canal* v. *Van
Vorst, supra,* was the neglect of the directors of the bank to
perform the duty required of the board of directors by a by-
law such as the corporation by its charter was authorized to
make.    To effectuate the discharge contemplated by this plea,
some statute must be invoked which imposes some positive
duty in the premises which the city is required to perform in
behalf of and for the benefit of the surety ; and the failure to
perform such duty must be due to neglect imputable to the
city, and not the mere neglect or misconduct of its officers.
The decision of the Court of Appeals of New York in *Board
of Supervisors* v. *Otis,* 62 *N. Y.* 88, proceeded on this princi-
ple, and I concur in the result in that case and the reasoning
by which it was reached.

Every financial officer of the city is required to give bond
for the faithful performance of his duties, with ample sureties,
to be approved by the common council.    Such a bond, and

the liability of the sureties thereon, was, in legislative contemplation, to be a substantial guaranty to the inhabitants of the city for the faithful discharge of duty. To facilitate the detection of delinquencies of the financial agents of the city, power was conferred upon and it was made the duty of certain officers to examine and investigate their accounts. The legislative intent was by such means to afford protection to the public from official delinquencies in addition to the responsibility of official bonds. A construction that would pervert provisions of this character from their legitimate purpose and create obligations in favor of sureties which would enure to impair the value of official bonds, would be unwarrantable and productive of much mischief.

That statutes, by-laws and ordinances making it the duty of certain officers to supervise the conduct or accounts of other officials, and even to remove defaulting officers, are designed for the security and protection of the corporation or government, and not for the benefit of sureties on official bonds, is settled by decisions of such conclusiveness as to put an end to discussion. *United States* v. *Kirkpatrick*, 9 *Wheat.* 720; *United States* v. *Vanzandt*, 11 *Id.* 184; *Dox* v. *The Postmaster General*, 1 *Pet.* 318; *United States* v. *Boyd*, 15 *Id.* 187; *Jones* v. *United States*, 18 *Wall.* 662; *Locke* v. *United States*, 3 *Mason* 446, 450; *Price* v. *Kirkham*, 3 *Hurlst. & C.* 437, 441; *Morris Canal* v. *Van Vorst*, 1 *Zab.* 100; *Amherst Bank* v. *Root*, 2 *Metc.* 522; *Watertown Ins. Co.* v. *Simmons*, 131 *Mass.* 85, 86; *Board of Supervisors* v. *Otis*, 62 *N. Y.* 88. In United States *v.* Vanzandt the suit was against a surety on a paymaster's bond. The act under which the bond was given made it the duty of the paymaster to render his vouchers to the paymaster general for the settlement of his accounts; and if he failed to do so for more than six months after he should have received funds, the act imperatively enjoined that he should be recalled and another appointed in his place. The paymaster had failed to comply with the requisites of the law; after which the paymaster general, instead of obeying its mandate by removing him,

placed further funds in his hands. The breach assigned was the failure of the paymaster to account for funds placed in his hands after his default and neglect in respect to funds previously received were known. The court held that the provision in this law was merely directory to the officers, and intended for the security and protection of government, and that it formed no part of the contract with the sureties, and that the laches of the officer of the government did not discharge the surety. In Amherst Bank *v.* Root it was held that the sureties of a cashier were not exonerated from liability for his defaults by reason of the neglect of the directors to examine into the condition of the bank as required by the by-laws. In Morris Canal *v.* Van Vorst this court held that a by-law of a corporation which required the periodical examination of the accounts of its cashier was for its security only, and formed no part of the contract of the surety, and that the neglect of the company to comply with it did not discharge the surety. The ninth notice, which set out the by-law, and alleged that the directors of the company from time to time dispensed with the cashier's production of his accounts, in violation of their duty, and averred that if there was any default on the part of the cashier it was occasioned by the willful omission or neglect of the plaintiff, was struck out as presenting no defence. In *Board of Supervisors* v. *Otis,* 62 *N. Y.* 88, the suit was on the official bond of a county treasurer. The condition was that he should faithfully execute all the duties of his office, and should pay according to law all moneys, &c., and should render a just and true account thereof to the board of supervisors or to the comptroller of the state. By statute the board of supervisors was required to audit and approve accounts. At successive annual meetings of the board the treasurer's accounts were presented, audited and approved. The referee found that the treasurer had wrongfully appropriated certain moneys which were not entered into his accounts as presented to the board, and, as a conclusion of law, that the failure of the board of supervisors to discover the error, even if attributable to negligence, was

not a defence to the action.   This ruling was approved in the Court of Appeals.   Allen, J., delivering the opinion of the court, said : " The sureties are not discharged from their obligation by reason of any neglect or omission of duty by the board of supervisors, or any unfaithfulness or even malfeasance on their part in their dealings with the principal in the bond.   *   *   *   The board of supervisors owed no duty to the defendant.   The law, while it imposes upon the supervisors the duty of examining the accounts of county treasurers, does not guarantee to the sureties the performance of that duty, or make the omission or negligent performance of it available to the sureties as a release from their obligation or a defence to an action upon the bond of their suretyship."

It will be observed that in Amherst Bank *v.* Root and Morris Canal *v.* Van Vorst the neglect was that of the board of directors of a private corporation, the governing body which acts for and represents the corporation itself more completely then a common council does a city.   In these cases, as well as most of the others cited, the ruling was rested also on the other ground, that all the officers of a corporation are agents of a common principal, and that the acts and neglects of one agent cannot affect or detract from the liability of another agent or his sureties to the common principal.

The defendants allege in this plea that *by law* it was the duty of the common council to supervise and examine into the conduct in office of the city treasurer, and to remove or supersede him in case of any neglect or violation of his duty as such officer.   Such an averment is insufficient.   It is an allegation of mere matter of law upon which no issue of fact can be taken.   The pleading must set out the facts from which the duty arises, and is bad in substance if the duty does not result from the facts stated.   *Brown* v. *Mallett,* 5 *C. B.* 599, 615, 616 ; *Seymour* v. *Madox,* 16 *Q. B.* 326, 330 ; *Crane* v. *Chapman,* 5 *Ad. & E.* 647 ; *Rader* v. *Township of Union,* 14 *Vroom* 518 ; *Marvin Safe Co.* v. *Ward,* 17 *Id.* 19.   The only averment in this plea is of the ordinance which makes it the duty of the mayor to supervise the conduct in office of the

treasurer, and in case of violation or neglect of duty or misconduct of the treasurer, to transmit information thereof to the common council. The utmost that can be said of the duty of the common council in the premises is that, upon a report being made to it by the mayor of the treasurer's neglect or violation of duty or misconduct in office, it was the duty of that body, which had power to remove from office, to investigate the charges, and if it should be found on such investigation that he had been guilty of malversation in office, then to remove him. If it be assumed that it was the duty of the common council to exercise its power to remove the officer for the protection of his sureties, following the precedent in Phillips v. Foxall and kindred cases, the duty to discharge the official would arise, and the non-performance of it be a defence to the sureties only after knowledge of the officer's dishonesty was brought home to the common council. *Bostwick* v. *Van Voorhis*, 91 *N. Y.* 353; *Tapley* v. *Martin*, 116 *Mass.* 275, 277.

The plea contains no averment that the mayor reported any charges against the treasurer to the common council. On the contrary, it avers that he neglected his duty in that respect. Nor does it aver that the common council had knowledge in any way or from any source of any dishonesty of the treasurer.

The plea concludes with an averment that the common council, by their neglect and disregard of duty, induced the said breaches, &c.; but the plea, not containing such averments as are necessary to have made it the duty of the common council to remove the treasurer from office for the protection of his sureties, cannot be helped out by mere assertion unsupported by facts set forth in a traversable form. On the substantial averments in the plea the defence is made on the neglect of duty by the mayor, and his neglect, as has been shown, is no defence.

The fifth plea is a copy of the plea which was sustained by this court in *Mayor, &c., of Newark*, v. *Dickerson*, 16 *Vroom* 38. The substance of the plea as set out in the report of that case is, that the plaintiffs, *i. e.*, the city, and not any officer or

department of the city government, contriving and intending to injure the defendants by willfully neglecting to examine the treasurer's accounts annually, as was their legal duty, *and otherwise permitted, encouraged, induced and were privy to* the alleged breach. The court held the plea alleged, in substance, that the *obligees* in the bond intentionally brought about the breach complained of, and on that construction of the plea sustained it. On the authority of that case this plea must be sustained.

On the several demurrers let judgment be entered in accordance with this opinion, the plaintiffs having leave to withdraw their demurrer to those pleas which have been found good in law, and to plead thereto.