## CLIFTON ET AL. *v.* THE STATE OF INDIANA, EX REL. DICKSON.

### [No. 21,724. Filed June 8, 1911.]

1. DRAINS.— *Repairs.— Assessments.— Deputy Surveyors.—* Under §9515 Burns 1908, Acts 1899, p. 119, providing that "all services now required of county surveyors by law may be done by any regularly appointed deputy county surveyor," a deputy county surveyor may make assessments for repairs of public drains. p. 35.

2. DRAINS. — *Repairs. — Surveyors. — Mandamus. — Complaint.* —A complaint to compel a county surveyor to accept as completed a certain ditch which relator had contracted to repair, alleging that the contract required such repairs to be completed by September 1, 1906, but that it was understood that time was not of the essence of the contract, that a certain part of the repairs were completed at such date, that owing to labor conditions and other things the other parts were not completed at such time, that the part first completed was built through quicksand and that neither tiling nor curbing was specified, and that before the remainder of the work was completed the repairs in the quicksand portion had been destroyed by the action of quicksand and other things, and demanding that such surveyor be required to accept such repairs as completed, is insufficient. p. 37.

3. DRAINS.—*Repairs.—Contracts.—Construction of.*—Contracts for the repair of drains must be construed as entire and not as capable of completion by piecemeal; and the contractor cannot justify his failure to complete the work at the time specified because of the weather, or of labor conditions. pp. 37, 39.

4. STATUTES.—*Permissive.—When Held Mandatory.*—Where the interests of the public, or of private persons are involved, permissive statutes are held mandatory. p. 37.

5. EVIDENCE.—*Judicial Notice.—Action of the Elements.*—Courts take judicial notice of the action of the elements, that ditches will fill up, that grass and other obstructions to ditches will make great progress in two years, and that only by making repairs on ditches approximately within the time fixed can they be kept open and the benefits received for which the assessments were made. p. 38.

6. DRAINS.—*Failing to Keep in Repair.—Liability of Trustees and Surveyors.— Bonds.*— Township trustees and county surveyors are liable upon their official bonds for failure to keep ditches in repair. p. 38.

7. OFFICERS.—*Duties.—Waiver.—Contracts.*—Public officers cannot waive public rights by acquiescence in delay in performing contracts. p. 38.

8. MANDAMUS.—*Officers.—Duty.*—Mandamus lies to compel a public officer to act only where it is his plain legal duty to do so. p. 39.

9. MANDAMUS.—*Injustice.*—Mandamus does not lie where relator is at fault, or where injustice would result. p. 39.

10. DRAINS.—*Repairs.—Surveyors.—Liability to Contractors.*—A surveyor may be liable on his official bond for neglect or refusal to perform any duty owing to a contractor in repairing drains. p. 40.

From Marshall Circuit Court; *Harry Bernetha,* Judge.

Action by The State of Indiana, on the relation of Platt B. Dickson, against Lewis Clifton and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*Harley A. Logan,* for appellants.
*Charles Kellison,* for appellee.

MYERS, J.—Petition by appellee relator for a writ of mandamus to compel the surveyor of Marshall county to accept, as completed, a public ditch under a contract for its repair. The alternative writ of mandate was waived, and a demurrer addressed to the petition was overruled. There was an answer of general denial, a second paragraph, alleging in detail the particulars of the failure to complete the work within the time fixed, to which a demurrer was overruled,

and a third paragraph, alleging that the assessments were made by a deputy county surveyor and were invalid, and thus there was no fund with which to pay for the work. A demurrer was sustained to the third paragraph, of which appellants here complain.

The action was originally against the county surveyor alone, but appellants, as landowners, were admitted upon their application to defend on the ground that they were interested parties, and that the surveyor was but a nominal party and without other interest than his official duty; they filed answers, as did also the surveyor.

No cross-errors are assigned, and we do not consider the question of the propriety of or necessity for the admission of the landowners as parties to defend.

There was a trial, with a finding and a judgment for the relator, and the landowners alone appeal.

The third paragraph of answer was clearly insufficient. In the case of *State, ex rel.,* v. *Roach* (1890), 123 Ind. 167, this court held that a deputy surveyor, under the

1. then existing statute, could not make assessments for repair of drains. An act of the next session of the General Assembly gave the power, which act was later amended (Acts 1899 p. 119, §9515 Burns 1908).

The sufficiency of the petition is challenged by the assignment of error in overruling the demurrer to the petition, and by an independent assignment here. Relator alleges that in March, 1906, he and the county surveyor of Marshall county entered into a contract to repair a certain ditch of 181 stations; that the contract was not reduced to writing until May 10, 1906; that by the terms of the contract "the time fixed for the completion of the work was September 1, 1906, but on account of the delay in commencing the work, occasioned by the delay of the surveyor, it was understood after said written contract was executed, and at the time he commenced the work, that the relator would probably

not be able to complete the work within the time specified; that it is a fact, and was so understood by the surveyor, that during portions of the summer months it was impracticable to get help to do such work, and that at no time did said surveyor, or his successor, defendant Troyer, ever claim that time was of the essence of the contract; * * * that said relator was not permitted to commence work until June 6, 1906; that he completed the work from station 181 to station 55 before September 1, 1906, and that part constituted more than three-fourths of the labor and expense; that on July 25, 1906, the surveyor inspected the work from station 181 to station 135, and promised to return before September 1 and inspect to station 55, but never came, and went out of office January 1, 1907, without accepting the work, or taking any official action to enable relator to obtain payment for that part of the work;" that on account of being unable to obtain help, and because of the weather, relator did not finish from station 55 to station 0 in 1906; that because of quicksand and other sands between stations 181 and 55 it was impossible to prevent the ditch from becoming partly filled, without curbing and tiling, and the specifications did not call for either; that in the fall of 1906 and spring of 1907 the ditch between stations 181 and 55 was out of repair, partly through the washing and sliding of sand, and partly through tramping of cattle; "that long before the commencement of this action said relator fully cleaned that portion of the ditch from station 55 to station 0," according to his contract, except as to the element of time, and threw out and cleaned portions a second time; that the surveyor on demand refused to accept the work from station 181 to station 55, because the former surveyor had not accepted the work, and when he saw it in 1907, it was in no condition to be accepted.

It is difficult to determine just what the force and effect of this complaint is. It seems to proceed upon the theory

that when the contract was made it was known that 2. it could not be complied with, and that though a time was fixed for completion, it was to be inconsequential, and the element of time immaterial, and that the surveyor had waived the provisions as to time indefinitely, for this action was not instituted until March 8, 1909. When the work was claimed to have been completed, we are not advised by the complaint. Nothing appearing to the contrary, the contract was an entire one, without any provision 3. for partial acceptance, or acceptance in sections. Relator seems to seek to obviate this by the allegation that the filling could not be prevented without curbing or tiling, neither of which was specified, and whether anticipated or unforeseen, it could hardly be claimed that a contractor would be required to maintain the condition of a ditch through quicksand, or to provide against the filling by sand, or by the tramping of cattle, but it does not follow that he may do such work in sections, at his will, and at such intervals of time that the first section is demanding repair by the time the last section is completed. The surveyor was bound to recognize the conditions of doing the work, such as might arise from labor conditions, or the seasons, but he made no provision against them, apparently, unless it be the element of consent by him, and while even such contracts ought to receive reasonable interpreta- 4. tion and enforcement, there must be in their very nature and purposes approximate fulfilment. Where the exercise of the power granted is necessary to the protection of the interest of the public, or of private persons, even permissive statutes are held to be mandatory. 29 Cyc. 1432.

Though the statute is silent as to requiring the fixing of a time for performance of the contract, it is so manifestly important as to become an imperative duty 3. on the part of the officer. In a matter in which the element of time is such an essential factor, public

policy forbids that a surveyor shall have the power to waive the rights of those for whom he acts, in extensions of time for the performance of the work of repairing drains, merely because of weather conditions, or difficulty in procuring laborers, which would operate as evasions of the contract, and of the duty owing to the public and to individuals.

The parties seem to have treated it as a good-faith effort to complete the work, though it is manifest that the farmers have not received the whole benefits for which they are assessed. Appellants' contentions are the failure to complete the work by September 1, 1906, and that in contracts of this character time is necessarily of the essence of

5. the contract. Taking judicial notice of the action of the elements, we know that ditches will fill up, that weeds, grass and obstructions of various kinds will make great progress in two years, and that only by doing the work within reasonable approximation of the time fixed can the waterway be kept open and the benefits received for which assessments are made. It is not shown that relator was not financially responsible, and presumably the

6. surveyor gave a good bond. It is made the duty of surveyors and trustees to keep ditches in repair, and there is a liability upon their bonds for failing to do so. It is notorious that they give little attention to their duty with respect to keeping drains in repair, and a few suits on their bonds would probably have a wholesome effect.

7. The rule of acquiescence in delay, as between persons contracting in a private capacity, can have no relevancy to the duty of public officers and those contracting for the discharge of a public duty. In such cases public officers cannot waive the obligation and duty as against the public. *Board, etc., v. Otis* (1875), 62 N. Y. 88, 96; *Commissioners, etc., v. MacRae* (1883), 89 N. C. 95; *Looney v. Hughes* (1863), 26 N. Y. 514; *People v. Jenkins* (1861), 17 Cal. *500; *Bonta v. Mercer County Court* (1870), 7 Bush 576;

*Mayor, etc.,* v. *Merritt* (1875), 27 La. Ann. 568; *Duncan* v. *State* (1852), 7 La. Ann. 377; *Supervisors, etc.,* v. *Knipfer* (1875), 37 Wis. 496.

Such contracts as the one before us are necessarily ones of entirety, and time is material in order to accomplish the end for which assessments are made, and to drag the work along until the period for recleaning under the law arrives would be a gross injustice to those who are required to pay for it. It is alleged that from station 181 to station 135 the work was seasonably done, and in reasonable compliance with the specifications, but we see no way of apportioning the expense—in view of the fact that the assessments are made as covering the whole cost—so as to remove the case from the category of entire contracts; therefore appellee must recover all or none. It is not shown that relator was entitled to have the work accepted in sections, neither is it shown when it was claimed that the work was actually completed. It would be manifestly unjust to require appellants to pay for something they have not obtained, and cannot obtain from the assessments, and equally manifest, in order that relator sustain his contention, that he show plainly a clear and imperative legal duty for the officer to accept the ditch and that no other remedy exists, which we think is not shown. *Town of Windfall City* v. *State, ex rel.* (1909), 172 Ind. 302. To hold otherwise would be to adjudge indirectly the validity of the assessments, and leave the landowners remediless, except a possible suit on the surveyor's bond, and this is based upon the ground of waiver by the surveyor, which is not to be tolerated.

Nor will mandamus lie where the relator is at fault, or where it will work injustice. *Teeple* v. *State, ex rel.* (1908), 171 Ind. 268.

We see no reason why relator may not have a right of action upon the surveyor's bond for such damages as he

may have sustained, if any, by reason of the surveyor's neglect of a duty owing to relator, and if so, this action would not lie; but in any event, we do not think relator shows a clear right and an imperative duty on the part of the officer to accept the work, and the burden is upon him to make this appear; and it does appear that he is at fault, and that his claim would work injustice to the landowners, both because of the lack of the benefits for which they are called on to pay, and in the possible losses from insufficient drainage.

The judgment is reversed, with instructions to the court below to sustain the demurrer to the petition, and for further proceedings not inconsistent with this opinion.