HOME INSURANCE CO. v. HOLWAY ET AL.

55 571
f125 180
f125 181

1. **Bond:** SURETY: LIABILITY OF. The fact that an insurance company did not notify the sureties who signed the bond of an agent that such agent had been delinquent in making remittances under a former agency was held not to release the sureties from liability, it appearing that they signed the bond at the request of the agent, without the solicitation or knowledge of the company, and that the former delinquency was not of a criminal character and had been made good.

2. ——: ——: ——. A surety on the bond of an agent is not discharged from liability by the mere fact that the principal is continued in the employment of the obligee after he has failed to make payments promptly, of which fact the surety has not been advised.

3. ——: ——: ——. A surety who allows his name to remain on a bond without protest after he knows of the delinquency of his principal is liable for future delinquencies.

*Appeal from Howard District Court.*

· WEDNESDAY, APRIL 6.

THIS is an action upon a bond executed by the defendants for the faithful discharge of the duties of the defendant, E. W. Holway, as the agent of plaintiff at Cresco, to solicit risks for fire insurance, deliver policies, and collect premiums. The cause was tried upon the issue joined between the plaintiff and the defendant Upton. The trial resulted in a verdict and judgment for the defendant. The plaintiff appeals. The facts are stated in the opinion.

*H. T. Reed,* for appellant.

*Barker Bros.* and *R. Noble,* for appellee.

DAY, J.—The facts in this case are very fairly and clearly set forth in the argument of appellant's attorney, substantially

1. BOND: surety : liability of. as follows: Some time in 1871 the defendant Holway was appointed by the plaintiff its agent at Cresco, Iowa, to solicit risks for fire insurance, deliver to

the patrons of plaintiff its policies of insurance, receive the premiums thereon, and account to the plaintiff for the same, and pay over to plaintiff the moneys received by him after deducting his expenses and commissions for compensation, which was a percentage of the premium paid on the policies, and to perform such other duties as are usually done by a local solicitor or insurance agent. Holway continued to act in this capacity for plaintiff till about March, 1876, when he resigned his position in favor of his brother, G. N. Holway, and his agency then terminated. At the time this agency terminated, in March, 1876, the defendant Holway was in arrear in his payments to plaintiff for the premiums received during the last two months of his business, and was then indebted to plaintiff on this account in the sum of about $150. He resigned because he was unable to pay this amount to the plaintiff when it was demanded, and turned the business over to his brother, a surety on his bond, in order to have him settle up the delinquency. A part of this amount then due the plaintiff was for premiums due from the patrons of the company, and which Holway had not collected at the time his agency closed, but what proportion the evidence does not establish. Subsequently to March, 1876, and prior to October 25, 1876, the full amount of the indebtedness due from Holway to the plaintiff had been paid. About October 25, 1876, Holway again desired to act as plaintiff's agent or solicitor at Cresco, and in order to secure the position was requested to furnish a bond with sureties, and a blank bond was then left with him to be signed by himself and sureties before he was authorized to act. Holway afterward signed this bond, and procured the defendants Upton and Marshall to sign with him as sureties, and he then forwarded the bond to plaintiff's agent, Page, at Des Moines. This is the bond sued on in this case. At the time this bond was left with Holway to be signed neither the plaintiff nor its agent, Page, knew, or had means of knowing, whom Holway would get to sign the bond, and they did not know who signed it until the

bond was received by Page at Des Moines, signed by the defendants. The plaintiff or its agent, Page, who acted in the matter, never, in any way or manner, made any statements or representations of any kind whatever to Upton in order to induce him to sign the bond, and had no communication with him whatever relative thereto, nor did Upton in any way apply to plaintiff or its agent, Page, for any information in regard to Holway's prior dealing or conduct while acting for plaintiff, but he signed the bond solely at the request of defendant Holway, and relying upon his promises that he would send him a statement every month of the business he was doing so that he could see for himself what his liability would be on the bond. Under this last appointment Holway continued to act for plaintiff till December 29, 1878, and during the last month of his agency he did not pay over to plaintiff promptly the money due from him, and when the account was closed on December 29, 1878, he was indebted to plaintiff for the business of October, November and December, 1878, amounting to $309.05 to recover which this action is brought on the bond. A part of the amount due from Holway was for premiums uncollected and due from the patrons of the company when the agency closed. Plaintiff did not inform Upton of the manner of Holway's dealing under the prior appointment, but did inform him as early as September 20, 1878. And Upton at this date knew that Holway was then running behind in his payments to plaintiff, and was not paying promptly the moneys due to plaintiff. received by him under the bond in suit. No time was stipulated in which Holway should make payments. Holway, under both this and the former appointment, was to have for his services a part of the moneys received by him for plaintiff When Upton signed the bond the name of Marshall was not to it, but Marshall signed it afterward at Holway's request and before it was delivered to the plaintiff.

I. The plaintiff requested the court, amongst others, to give the jury the following instructions:

"2. The plaintiff was under no obligations to inform Upton before he signed the bond that Holway had been in arrears to plaintiff in his payments under the former agency, unless he, Upton, inquired of them for information as to his prior dealings with the company, and if you find that Upton did not so inquire of plaintiff, and plaintiff or its agent Page made no representations or statements to Upton in any way to induce him to sign the bond, then plaintiff is entitled to recover the full amount thereof.

"3. If the plaintiff, or its agent, Page, made no statement to Upton, or did no act to prevent Upton from finding out that Holway had been in arrears to plaintiff under the former agency, then the plaintiff is entitled to recover the full amount proved."

The court refused these instructions, and upon this branch of the case gave the following instruction:

"10. If you find from the evidence that before the execution of the bond the said E. W. Holway had been in the employ of the plaintiff as its agent, and he had, as such agent, become a defaulter to the plaintiff, and that such fact was known to the plaintiff at the time of its acceptance of the bond, and that defendant executed it ignorant of such fact, and that plaintiff retained the bond without disclosing the fact to defendant, then the plaintiff is not entitled to recover, and your verdict should be for defendant."

This action of the court the plaintiff assigns as error.

The cases upon this subject are not all, perhaps, susceptible of complete reconciliation. It seems to us, however, that the decided weight of authority sustains the view of the law presented in the instructions asked by the plaintiff. The case of the *Ætna Life Insurance Co. v. Mabbett*, 18 Wis., 667, is directly in point. In that case an action was brought by the plaintiff, an insurance company, against the sureties on the bond of its agent, conditioned for his duly accounting for and paying over to the company on demand moneys received for it. The answer alleged that the plaintiff took and received

the bond in pursuance of a uniform custom by which all its agents were required to give bonds, and that it fraudulently concealed from the sureties the fact that the principal who then was, and for some time had been, its agent, was at that time a defaulter in the transaction of its business. It was held that the answer did not set up a defense, there being no allegation that the bond was executed at the solicitation of the plaintiff, or any of its officers or agents, nor that there was any intercourse between them and the sureties, nor that the sureties had appealed to them for information as to the course of dealing or state of accounts between the plaintiff and the agent. The facts alleged in this answer are really much stronger in favor of the sureties than the facts shown to exist in the present case, as the agent was in the employment of the principal and an actual defaulter when the bond was executed, whereas, when the bond was executed in the case at bar, Holway was not in the employment of the plaintiff, and was not a defaulter.

The case of *Roper v. Trustees of Sangamon Lodge*, 91 Ill., 518, is also directly in point, and much stronger in its facts, in favor of the sureties, than the case at bar. The point determined is correctly stated in the syllabus as follows: "Where a party becomes surety upon the bond of a treasurer of a secret society, for the faithful application of moneys in his hands, payable to the society, the fact that the officers and members of the society knew of his previous misappropriation of the funds intrusted to him during the prior year, and with such knowledge re-elected him and failed to communicate such fact to his sureties, and they doing no act to put the sureties off their guard or prevent them from ascertaining the facts, no fraud can be imputed to the society which can be set up in avoidance of the sureties' liability on the bond." See, also, *Ham v. Grove*, 34 Ind., 18; *Atlantic & Pacific Telegraph Co. v. Barnes*, 64 N. Y., 385; *Cowley v. The people*, Illinois Supreme Court, in The Reporter of Nov. 10, 1880, page 592; *The Remington Sewing Machine*

*Company v. Kezertee,* 5 N. W. Rep., 809 (Wis.); *Atlas Bank v. Brownell,* 11 Am. Rep., 231, 9 R. I., 168.

The cases relied upon by the appellee are nearly all distinguishable in principle from the case at bar.   In *Looy, Ad., v. State,* 39 N. J. L., 135, it was held that "a person taking a bond for the future good conduct of an agent already in his employment must communicate to a surety his knowledge of the past criminal misconduct of such agent in the course of such past employment, in order to make such bond binding." No fact appears in the present case from which criminal misconduct on the part of Holway can be inferred.   He made correct statements of the condition of his accounts to the plaintiff.   It does not appear that he attempted to defraud them in any way.   Upon the contrary, when he found himself running behind in his accounts he made arrangements for the settlement of his delinquencies, and soon caused the plaintiff to be paid in full.   He may have acted improperly and carelesly in the management of his principal's money, but his conduct is not shown by the evidence to be criminal. In *Philips v. Foxall,* L. R., 7 Q. B., 666, it was held that "on a continuing guaranty for the honesty of a servant, if the master discovers that the servant has been guilty of dishonesty in the course of the service and instead of dismissing the servant he chooses to continue him in his employ without the knowledge and consent of the surety, express or implied, he cannot afterwards have recourse to the surety to make good any loss which may arise from the dishonesty of the servant, during the subsequent service."   In this case the surety guaranteed the honesty of a servant.   The master detected the servant in acts of dishonesty and took an agreement from the servant to pay a certain amount monthly on account of a defalcation which existed, which facts were unknown to the surety.   It was for a defalcation subsequently occuring that it was sought to hold the surety liable.   In *Franklin Bank v. Cooper,* 36 Me., 179, the bond was procured at the request of the bank, as surety for its cashier,

who was then known to be a defaulter, and was made to cover past as well as future delinquencies, the bank having an opporportunity to disclose the facts to the surety.

*Densmore v. Tidball*, 34 Ohio St., 411, was an action upon a bond to indemnify the Adams Express Company against loss from the dishonesty or unfaithfulness of an agent. The agent was àt the time in the employment of the company and had been guilty of acts of embezzlement, which fact was not communicated to the surety. The court say: " Admitting that a principal, in accepting a guaranty for the faithful and honest conduct of his agent, is not bound, under all circumstances, to communicate to the guarantor every fact within his knowledge which increases the risk, yet we think there can be no doubt, either upon principle or authority, that when an agent has acted dishonestly in his employment the principal, with a knowledge of the fact, cannot accept a guaranty for his future honesty from one who is ignorant of the agent's dishonesty, and to whom the agent is held out by the principal as a person worthy of confidence. The failure to communicate such knowledge under such circumstances would be a fraud upon the guarantor."

In *Graves v. Lebanon National Bank*, 10 Ky., 23, when a cashier who had given no bond was guilty of embezzlement which might easily have been discovered, and the bank furnished a statement of its good condition, after which parties became sureties for the cashier, it was determined that they could not be held. In *Charlotte, Columbia & Augusta Railroad v. Gaw*, 59 Ga., 685, it was held that " the agent of a corporation, being under bond to account and pay over daily, cannot be trusted with more money at the sureties' risk after dishonesty of the agent has been discovered by the corporation; but he may be so trusted so long as the circumstances, fairly interpreted, point not to moral turpitude but to a want of diligence or punctuality, rather than to a want of integrity."

In all of these cases the agents were guilty of criminal

misconduct, or of positive dishonesty. In the last case it is expressly held that the agent may be trusted so long as the circumstances indicate a want of diligence or punctuality, and not a want of integrity. Under the facts disclosed in this case, the court in our opinion erred, both in giving the instruction complained of, and in refusing those asked.

II. The plaintiff requested the court to instruct the jury as follows:

"4. Under the stipulation of the bond in suit, plaintiff was not bound to notify Upton that Holway was not making payments promptly, and if plaintiff did no act and made no statement to Upton to prevent his knowing that Holway was not paying promptly, then plaintiff is entitled to recover.

"5. If you find from the evidence that defendant Upton, on or about September 20, 1878, knew that Holway was in arrears in his payment to plaintiff and other companies, to whom he was surety for Holway, and permitted his name to continue on the bond to plaintiff, and made no objections to continuing liable thereon, then he is liable for the full amount due plaintiff on the bond from Holway."

The first of the above instructions should have been given. A surety is not discharged from liability from the mere fact that the principal is continued in the master's employment after he has failed to make payments promptly, of which fact the surety has not been advised. See *Pittsburg, Ft. W. & C. Ry. Co. v. Schaeffer*, 59 Pa. St., 350; *Albany Dutch Church v. Vedder*, 14 Wend., 166; *Bush v. Critchfield*, 4 Ohio, 736; *Jones v. United States*, 18 Wall., 662; *Board of Supervisors v. Otis*, 62 N. Y., 88; *McKenzie v. Ward*, 58 N. Y., 541; *Atlantic & Pacific Tel. Co. v. Barnes*, 64 N. Y., 385.

The second of the above instructions should also have been given. The jury found specially that Upton on or about September 20, 1878, learned or knew that Holway was then in arrears with his payments to

plaintiff and other companies to whom Upton was surety for him. The defalcation for which it is sought to hold the defendant liable arose after that time. If the defendant, having knowledge that Holway was in arrears, suffered his name to remain upon the bond without objection, protest or complaint, he thereby tacitly manifested a willingness that Holway should be continued in the agency, and that he should be held responsible for his acts. The defendant cannot require that the plaintiff should manifest more solicitude, and exercise a greater degree of care for the protection of the defendant than he was willing to manifest and exercise for the protection of himself.

III.  The jury returned with their general verdict the following special findings:

1.  Did the plaintiff or its agent, Page, ever request Upton in any way to sign the bond in question?  No.

2.  Did plaintiff or its agent, Page, know before the bond was received by them from Holway who was to sign it as surety for Holway?  No.

3.  Did the plaintiff or its agent, Page, ever have any communication in any way with Upton before he signed the bond? No.

4.  Did Upton ever, at any time before the bond was signed by him, apply to plaintiff or its agent, Page, to know the condition of Holway's accounts?  No.

5.  Did Upton ever apply to plaintiff or its agent, Page, at any time since the bond was signed to know if Holway was paying over the premiums received by him on plaintiff's insurance policies?  No.

6.  Did Upton on or about September 20, 1878, learn or know that Holway was then in arrears with his payments to plaintiff and other companies to whom Upton was surety for him?  Yes.

7.  Was Holway to have for his services a percentage or commission on the amount of premiums received by him? Yes.

8. Was he to take his percentage or commission for his services out of the premiums he so received? Yes.

9. Did Upton at the time or before he signed the bond inquire of plaintiff or its agent, Page, for information as to Holway's dealings with plaintiff while he was acting for plaintiff before this bond was made? No.

10. Did the plaintiff or its agent, Page, in order to get Upton to sign this bond, make any statement or representations of any kind, in any way, in regard to Holway's character or solvency, or how he had before dealt with them? No.

11. Did Upton sign the bond by reason of any statement or representation of any kind made to him by plaintiff or its agent, Page? No.

12. Has Holway paid over to plaintiff all that he owes it for premiums or other moneys received by him for plaintiff, and if not, then state how much he still owes it? No. Still owes $309.05.

13. What time did he quit work for plaintiff under the last appointment? About December 29, 1878.

14. At the time Holway gave the bond in suit was he indebted to plaintiff in any sum? No.

15. Was the name of Marshall to the bond in suit when it was sent by Holway to, and received by, Page? Yes.

16. Was the arrearage of Holway to plaintiff under the last appointment caused in part by reason of his failure or neglect to collect premiums due from the patrons of the company? Yes.

17. Was the arrearage of Holway to plaintiff under the first agency, prior to giving of the bond in suit, caused in part by failure or neglect of Holway to collect premiums from the patrons of the company? Yes.

18. Did Upton sign the bond in question relying upon the promises of Holway that he would send him monthly statements of his accounts with plaintiff? Yes.

Upon these special findings the plaintiff filed a motion for judgment in its favor against the defendant for $309.05, with

interest from December 29, 1878. The motion was overruled. This action of the court is assigned as error.

The court correctly instructed the jury that the addition of the name of Marshall before the delivery of the bond to plaintiff would not avoid the bond. There is an entire absence of any testimony warranting a finding that Holway during his first employment was guilty of a criminal embezzlement of plaintiff's money. The only evidence of his dishonesty is the fact that he ran behind in his payments. The defendant knew that Holway was in arrears with his payments about September 20th, 1878. If, then, the running behind with his payments was proof of Holway's dishonesty, the defendant was possessed of such proof as early as September 20, 1878, and was then placed in the same position as to Holway as if he had been informed of Holway's arrearage during his first employment. The delinquencies for which it is sought to hold the defendant liable all occurred after that time. Before the delinquency occurred, the defendant had the same character of evidence as to Holway's dishonesty as that possessed by the plaintiff. Yet it does not appear that he made any request of the plaintiff to discontinue the agency, nor that he expressed any unwillingness to continue to be bound for Holway's acts. In addition to all this the jury have found specially that Upton signed the bond relying upon the promise of Holway to furnish him monthly statements of his accounts with the plaintiff. The defendant testifies that Holway did furnish such statements for a while. When he violated this agreement and neglected to furnish the monthly statements, the defendant should have been stimulated, in the exercise of reasonable caution and diligence, to examine into the cause of the failure and ascertain the true condition of the accounts. The defendant, having been careless and negligent in looking after his own interests, cannot very consistently urge that he has suffered by the negligent omissions of the plaintiff. Under the special facts found, judgment should have been rendered against the de-

fendant for $309.05, with interest at six per cent from December 29, 1878. At the option of the plaintiff, judgment will be rendered in this court for that amount, or the cause will be remanded for judgment in the court below.

REVERSED.