Hebert v. Lee.

·HEBERT *v.* LEE *et al.*

(*Nashville.*   December Term, 1906.)'

1.  **PRINCIPAL AND SURETY.** Failure of obligee to inform sureties of principal obligor's embezzlement relieves sureties.

   The failure of the general agent of an insurance company, who required a subagent to execute a bond for the prompt payment of all moneys collected by him in the business of his agency, to inform the sureties at the time they executed the bond that the subagent was then largely indebted to his principal on account of funds embezzled by him, which fact was known to the general agent, relieves the sureties from liability on the bond.

   Cases cited and approved:   Phillips v. Foxhall, L. R., 7 Q. B., 666; Smith v. Bank, 1 Dow, 272; State v. Sooy, 39 N. J. Law, 135; Dinsmore v. Tidball, 34 Ohio St., 411; C. C. A. R. R. v. Gaw, 59 Ga., 685; Saint v. Wheeler, etc., Mfg. Co., 95 Ala., 362; Roberts v. Donovan, 70 Cal., 108; Atlantic, etc., Tel. Co. v. Barnes, 64 N. Y., 385; Newark v. Stout, 52 N. J. Law, 35.

2.  **SAME.** Sureties not relieved by failure of obligee to inform sureties of default of their principal not involving moral turpitude.

   The mere failure of the obligee in a bond such as that described in the preceding headnote, to inform the sureties thereon, in the absence of investigation or inquiry on their part, that their principal had fallen behind in his accounts until at the time of the execution of the bond, he was considerably indebted to the obligee, does not relieve the sureties from liability, if such undisclosed acts of the principal obligor do not involve moral turpitude, but are such as are consistent with honesty, and only tend to show that he is negligent, dilatory or unskilled.

   Cases cited and approved:   Screwmens, etc., Assn. v. Smith, 70 Tex., 168; Atlas Bank v. Brownell, 9 R. I., 169; Home Insurance Co.

Hebert v. Lee.

v. Holway, 55 Iowa, 571; Watertown Fire Ins. Co. v. Simmons, 131 Mass., 85; Domestic Sewing Machine Co. v. Jackson, 15 Lea, 418.

3.  **SAME.** Provision of bond securing prior debts valid. But is avoided by withholding knowledge from sureties that debts are dishonest.

A provision in the bond described in headnote 1, by which the sureties undertake to become liable, not only for the debts that may be incured by their principal after the date of the bond, but also such debts as he may owe at that time to the obligee growing out of the affairs of his agency, is valid and enforceable, if such prior debts were honestly incurred; but if the obligee withholds from the sureties the knowledge that such debts were the result of dishonesty on the part of the principal obligor, the sureties can avail themselves of such unindisclosed knowledge in order to defeat a recovery against them on the bond, notwithstanding the provision in the bond obligating them for prior debts.

Case cited and approved: Franklin Bank v. Stevens, 39 Mo., 532.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

P. M. ESTES, for Hebert.

SLEMONS & BARTHELL and TEMPLETON, LINDSAY & TEMPLETON, for sureties of Lee.

M̄R. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The complainant was the general agent for Tennessee of the Provident Saving Assurance Society of New York, and as such had the power to appoint subagents in his territory, who were directly responsible to him for the conduct of the business done by them, while he was liable to his principal for any default on their part. On the 12th of March, 1902, he appointed the defendant Lee, of Knoxville, in this State, as a subordinate agent of the company, and at the same time entered into a written contract with him prescribing his duties and providing for his compensation. Under this contract Lee was to canvass for applications for assurance on the lives of individuals, and, when obtained, forward them through complainant to the society for its action. One of its terms required Lee to collect and "forthwith pay over to the complainant all moneys collected by him for the society, less the amount he was entitled to receive for compensation." It was also provided therein that Lee should furnish bond, with satisfactory sureties, for the faithful performance of his duties growing out of this contract of agency, and that this bond was to be executed as a condition precedent to his employment. Notwithstanding this provision, Lee entered at once upon his agency. Subsequently, however, the complainant, whose residence was in Nashville, Tennessee, forwarded to Lee at Knoxville, Tennessee, a printed form of a bond in the penalty of $2,000, with direction

that he execute it and obtain two sureties upon it.    On
receiving this, on the 1st of July, 1902, having signed
this bond himself and procured E. Buffat and Bruce
Davis to execute it as his sureties, Lee returned it to
complainant at Nashville, and the same was accepted
by him.    Subsequently Buffat, one of these sureties,
died, and the complainant thereupon called upon Lee
to execute another bond, and to this end sent him, as
in the first instance, a printed form of a bond in the
penalty of $2,000, which he procured the defendant Lut-
trell to sign as his surety, when, having returned it to
the complainant, the same was accepted by him.    This
bond was executed on the 6th of March, 1903, and on
the 1st of May thereafter the relation between com-
plainant and defendant Lee was dissolved and the lat-
ter was discharged, owing at the time to the former some
$1,600, arising out of his conduct of this agency.    The
present bill is filed by the complainant against Lee, the
principal, and Bruce Davis, Mrs. Helen Buffat, admin-
istratrix of E. Buffat, and James C. Luttrell, to hold
them liable for the amount of this deficit.    Lee, the
principal, made no defense, and by his silence confessed
the claim.    Davis and Luttrell, as well as the admin-
istratrix of the deceased surety, defend, and say, among
other things, that at the time of the execution of the
two bonds in question Lee was a defaulter to the com-
plainant, and that he and the complainant conspired
together for the purpose of misleading the sureties by
concealing the fact of this default, and by representing,

as is alleged they did, "that the said Dan K. Lee was soliciting agent of the said Hebert, and was conducting a legitimate insurance business as such soliciting agent under the said Hebert."

The court of chancery appeals find as a fact that at the time of the execution of the bond dated July 1, 1902, Lee was indebted to complainant in the sum of $693.20, and from that date to March 6, 1903, the day of the execution of the second bond, his liabilities to complainant increased, until on that day it amounted to $1,711.-91, and from this latter date to that of his dismissal it increased in the sum of $182.71, making a total of liabilities accruing under the contract of agency of $2,725.70, less the sum of $1,094.05 paid over from time to time by Lee to Hebert.

It is further found by that court that no communication passed between the complainant and the several sureties signing these bonds, and they signed the same without making any inquiry as to the condition of Lee's accounts, and without any misleading statement authorized by complainant to be made by Lee to them. So it is, if they are discharged from liability on these bonds, it will result from no affirmative action on his part, but from mere inaction, which the law will ascribe as a wrong done by him to these sureties.

We think there can be no doubt that the mere failure upon the part of the complainant to inform these sureties of the fact that their principal, Lee, had fallen behind from time to time in his accounts as agent, until

his liabilities had amounted at the execution of these two bonds to the sums stated, would not be sufficient to relieve them from liability. If the present case was that—in other words, if this was a case in which the agent was simply behind in his accounts, and the complainant had failed to communicate, in the absence of investigation or inquiry upon the part of the sureties, this fact to them—we think this would not constitute a ground for resisting a recovery on these bonds. But the court of chancery appeals does not leave the case in that condition. That court finds, in words which admit of no other construction, that at the time of the execution of these several bonds Lee's liabilities grew out of the embezzlement of his principal's funds, and that he was at each of these dates a "defaulter" within the knowledge of complainant.

We think, upon this finding of facts, that a failure upon the part of the obligee to communicate the criminal conduct of Lee, out of which the existing indebtedness occurred, at the time of the making of these bonds, to the sureties upon them, although not inquired of by the sureties, was such conduct on his part as to relieve the sureties from liability. This principle, which it seems to us rests in sound morals, has been announced in many cases, the leading one of which, possibly, is that of *Phillips* v. *Foxhall*, L. R., 7 Q. B., 666. This case rested for authority, in part, upon *Smith* v. *Bank of Scotland*, 1 Dow, 272. In the course of the opinion delivered in the House of Lords in that case, Lord El-

don said: "If a man found that his agent had betrayed his trust, that he owed him a sum of money, . . . if under such circumstances he required sureties for his fidelity, holding him out as a trustworthy person, knowing or having ground to believe that he was not, then it was agreeable to the doctrines of equity, at least in England, that no one should be permitted to take advantage of such conduct, even with a view to security against future transactions of the agent."

In *State* v. *Sooy*, 39 N. J. Law, 135, it was held "that a party taking a bond for the future good conduct of an agent already in his employment must communicate to his security his knowledge of the past criminal misconduct of such agent in the course of such past employment, in order to make such bond binding."

In *Dinsmore* v. *Tidball*, 34 Ohio St., 411, the action was upon the bond to indemnify the Adams Express Company against loss for the dishonesty or unfaithfulness of an agent. The agent was at the time in the employment of the company, and had been guilty of acts of embezzlement, which fact was not communicated to the surety. In disposing of the question raised by the surety upon this state of facts the court said:

"Admitting that a principal, in accepting a guaranty for the faithful and honest conduct of his agent, is not bound under all circumstances to communicate to the guarantor every fact within his knowledge which increases the risk, yet we think there can be no doubt, either upon principle or authority, that, when an agent

had acted dishonestly in his employment, the principal, with the knowledge of the fact, cannot accept a guaranty for his future honesty from one who is ignorant of the agent's dishonesty, to whom the agent is held out by the principal as a person worthy of confidence. The failure to communicate such knowledge under such circumstances would be a fraud upon the guarantor."

In *Charlotte, Columbia & Augusta R. R.* v. *Gaw*, 59 Ga., 685, 27 Am. Rep., 403, it was held, in applying the principle in favor of a surety where the dishonesty of the agent was discovered subsequent to the making of the bond, and yet was not communicated to the surety, that such agent, "being under bond to account and pay over daily, cannot be trusted with more money at the sureties' risk after dishonesty of the agent had been discovered by the corporation, but may be so trusted so long as the circumstances, fairly interpreted, do not point to moral turpitude, but to a want of diligence and punctuality, rather than to a want of integrity." The same principle is recognized as being eminently sound in *Saint* v.*Wheeler, etc., Mfg. Co.*, 95 *Ala.*, 362, 10 South., 539, 36 Am. St. Rep., 210; in *Roberts* v. *Donovan*, 70 Cal., 108, 9 Pac., 180, 11 Pac., 599; in *Atlantic, etc., Tel. Co.* v. *Barnes*, 64 N. Y., 385, 21 Am. Rep., 621, and in *Newark* v. *Stout*, 52 N. J. Law, 35, 18 Atl., 943.

The rule is otherwise if the acts of the agent, undisclosed to his surety, do not involve moral turpitude, but are such as are consistent with honesty, and only tend to show that the agent is negligent, dilatory, or

unskilled. In such case the law does not impose the duty upon the obligee, unasked, to give the surety information of such facts. This distinctive principle is recognized in *Screwmen's etc., Ass'n* v. *Smith,* 70 Texas, 168, 7 S. W. 793; *Atlas Bank* v. *Brownell,* 9 R. I., 169, 11 Am. Rep., 231; *Home Insurance Co.* v. *Holway,* 55 Iowa, 571, 8 N. W., 457, 39 Am. Rep., 179; *Watertown Fire Ins. Co.* v. *Simmons,* 131 Mass., 85, 41 Am. Rep. 196; *Domestic Sewing Machine Co.* v. *Jackson,* 15 Lea, 418.

It is true, as has been stated, that the complainant had no communication with the sureties upon these bonds, and that they were presented to and signed by them at the instance of Lee, their principal; yet we think this fact does not prevent them from availing themselves of the principle announced in *Phillips* v. *Foxhall,* supra, and the other cases to which reference has been made. The bonds were sent out by the complainant to Lee in order that he might obtain sureties upon them, and we can see no distinction between this case and one where the obligee personally presents the bond to the surety and obtains his signature to it, knowing at the time that the agent has been guilty of criminal offense theretofore in the management of his agency, and fails to communicate the fact to the surety. The presentation of the bond, without more, is an implied assurance, at least, that the agent has been guilty of no criminal delinquency in the management of the affairs of his agency; and we think the surety is as well discharged in the one case as in the other, if

without any knowledge of the existence of such default he signs the bond.

Nor do we think that the liability of these sureties, in view of the finding that Lee had been guilty of embezzlement of the obligee's funds theretofore, is affected by the recital in these bonds that the sureties undertook to become liable, not only for the debts that might be incurred by Lee after the date of these bonds, but such moneys as he might owe to the obligee growing out of the affairs of his agency at that time. In the absence of the element which we find as a matter of law goes to the discharge of these sureties, there is no doubt upon these bonds that these sureties would have been liable, not only for debts incurred thereafter by Lee in the course of his agency, but for debts then existing. But the knowledge of the obligee that these debts were the result of dishonest dealings upon the part of Lee, uncommunicated to the sureties, in spite of this recital, can be availed of by the sureties in order to defeat recovery on these bonds. *Franklin Bank* v. *Stevens*, 39 Me., 532.

It follows, therefore, that the decree of the court of chancery appeals is affirmed.