AMERICAN SURETY CO. OF NEW YORK v. JOHNSTON & BURNETT.

(No. 5834.)

(Court of Civil Appeals of Texas. San Antonio. April 28, 1917. Rehearing Denied May 19, 1917.)

1. PRINCIPAL AND SURETY ⟨⟩79—LIABILITY ON BOND—"MISAPPLICATION."

The action of the agent of an insurance company in collecting premiums and failing to deliver same to his employer constituted a "misapplication" within the provisions of a bond indemnifying the employer against loss sustained by any misapplication of such agent.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 125.

For other definitions, see Words and Phrases, First and Second Series, Misapplication.]

2. PRINCIPAL AND SURETY ⟨⟩123(1) — DISCHARGE OF SURETY—PRIOR MISCONDUCT.

That such agent had made a misapplication of funds before the bond was executed did not cancel the liability of the surety company where it did not appear that the agent had been guilty of any crime, but had merely been in arrears in his prior payments.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 304–309.]

Error from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by Johnston & Burnett against the American Surety Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

J. F. Carl and P. H. Swearingen, Jr., both of San Antonio, for plaintiff in error. Taliaferro, Cunningham & Birkhead, of San Antonio, for defendant in error.

FLY, C. J. This is a suit brought by Johnston & Burnett against the American Surety Company to recover the sum of $500 on a bond given by the latter to secure the faithful performance of certain duties on the part of W. R. Meredith, an employé of Johnston & Burnett. It was alleged that Meredith had collected certain premiums on certain policies to be issued by his employer, amounting to the net sum of $628.85, and had failed and refused to pay over the same to his employer; that the surety company and Meredith had executed a bond to Johnston & Burnett, hereinafter called the employer, by which they bound themselves to pay to the employer for any pecuniary loss not exceeding $500, sustained by them "by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or misapplication on the part of said employé, directly or through connivance with others while in any position or at any location in the employ of said employer." A trial by the court resulted in a judgment for the employer in the sum of $500.

[1] The first assignment of error complains of the overruling of a general and a special exception to the petition. It is overruled. The petition clearly set out a cause of action on the bond. The cause of action was not one founded on a debit and credit account between employer and employé, but on a loss due to a misappropriation of the funds belonging to the employer. We can hardly conceive of the object and purpose of the bond if it does not cover the case of the appropriation of money belonging to the employer. The employé had collected certain money of his employer, which he should have delivered to the employer, but which he failed to do. The terms of the bond were broad enough to perfectly cover the case. They cover any pecuniary loss, not in excess of $500, sustained by the employer of money or property by any act or acts of fraud, etc., or misapplication on the part of the employé. It would seem to be a misapplication to collect premiums from persons seeking insurance, and never deliver them to the employer. This is not a parallel case to either of the cases cited by the surety company. In the case of Dixie Ins. Co. v. Nelson, 128 Tenn. 70, 157 S. W. 416, it was held that where an agent was permitted to collect and deposit premiums in his own name and use the same in his business, he was not guilty of embezzlement under the terms of the policy of insurance in that case. The terms of that policy were not nearly so broad as those used in the policy in this case. The federal case of Monongahela Coal Co. v. Fidelity Co., 94 Fed. 732, 36 C. C. A. 444, does not construe the terms of the bond, but merely holds that where a balance is due by the agent on a settlement between him and the principal that would not show such an appropriation as was contemplated by the parties. It is not in point. In this case there were no accounts kept between the employer and employé, but the latter was required as soon as he collected a premium to remit it to the employer.

[2] The second assignment of error is overruled. The fact that Meredith may have made misapplication of funds before this bond was executed could not excuse the acts afterwards nor cancel the liability of the insurer. Joyce, Ins. § 2766; Hebert v. Lee, 118 Tenn. 133, 101 S. W. 175, 12 L. R. A. (N. S.) 247, 121 Am. St. Rep. 989, 11 Ann. Cas. 1029. In the last-cited case it was held:

"We think there can be no doubt that the mere failure upon the part of the complainant to inform these sureties of the fact that their principal, Lee, had fallen behind from time to time in his accounts as agent, until his liabilities had amounted at the execution of these two bonds to the sums stated, would not be sufficient to relieve them from liability. If the present case was that—in other words, if this was a case in which the agent was simply behind in his accounts, and the complainant had failed to communicate, in the absence of investigation or inquiry upon the part of the sureties, this fact to them—we think this would not constitute a ground for resisting a recovery on these bonds."

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The court followed the quotation with the holding that as the agent had been guilty of the crime of embezzlement, that fact should have been communicated to the sureties. In the present case it was not alleged or proved that the agent had been guilty of a crime, but had, prior to the execution of the bond, been in arrears in his payments. There are numbers of cases that do not make the exception made by the Tennessee court. Home Ins. Co. v. Holway, 55 Iowa, 571, 8 N. W. 457, 39 Am. Rep. 179, and numerous authorities therein cited. However it is not claimed that Meredith had been guilty of a crime before the bond was executed. Embezzlement was not charged against Meredith, in the petition. The evidence does not show that the employer knew of any criminal conduct upon the part of Meredith before the bond was executed. Zevely, an employé of the surety company, testified to a conversation with Burnett, in which the latter had said that Meredith had been slow in remitting premiums, and had given worthless checks for the same, but had "by some hook or crook" settled up. Burnett denied the conversation with Zevely, and testified that he never suspected Meredith of being crooked until he notified the surety company after the bond was executed. It seems that the court believed him.

The third, fourth, and fifth assignments are based upon questions of fact upon which the evidence was conflicting, and they are overruled.

The sixth assignment of error is a reiteration of a portion of the first assignment, and is overruled.

The judgment is affirmed.

SWEARINGEN, J., entered his disqualification in this case.