## NATIONAL CASUALTY CO. v. SIPES.

No. 26646.   July 6, 1937.

Rehearing Denied Sept. 14, 1937.

Follens & Follens, for plaintiff in error.

Hall & Thompson and R. A. Jackson, for defendant in error.

WELCH, J. We will refer to the parties to this cause as they appeared in the lower court.

This is an action brought by plaintiff to recover from the defendant by reason of defendant's having qualified as surety on a bond guaranteeing that Doyle Book Store, principal on the bond, would faithfully perform the terms of a contract made between plaintiff and said principal. Plaintiff operated a school book depository, and as such, in 1927, employed Doyle Book Store as his agent for handling of school books and supplies under consignment contract, his agent furnishing indemnity bond from date to date for the faithful performance of the duties of the contract, among them being the duty of accounting for and turning over to plaintiff moneys received for the sale of consigned goods. This relation continued until about June, 1931, when the Federal Surety Company, surety on the contract and bond of Doyle Book Store, was adjudged a bankrupt, at which time Doyle Book Store had not remitted to plaintiff for books sold in the sum of $2,-119.51. Doyle Book Store had made reports of books sold from time to time showing books sold for larger sums than were remitted to plaintiff until the final report totaling an unremitted sum of $2,-119.51. On June 2, 1931, plaintiff wrote Doyle Book Store asking what had become of the money for the books sold and for which they had received no remittance, and discussed plans for renewing the contract and bond, suggesting that the bonding company would not renew the bond if told that Doyle Book Store was in default, and that he settle up in full with them and then get a bonding company to write a new bond, or if he knew some way whereby he could get a new bond without getting clearance under the old bond, they would consider the plan.

Thereafter, near the middle of August, 1, plaintiff received from Doyle Book re a contract and bond dated August 1, 1. Defendant qualified as surety on latter bond. Both contracts and both ds were identical in terms and pro- ons.

he contract of August 1, 1931, the faith- performance of which was guaranteed he bond of the defendant, provided that ntiff consigned his books to Doyle Book e; that title to the books was retained plaintiff until sold; that all moneys de- d from the sale of books belonged to ntiff, and the Doyle Book Store held money as trustee. The Doyle Book e was further required to sell all books cash, to remit monthly for sales made, on the first day of February, April, ber, and December of each year to ish complete inventory of books and lies on hand, and with said inventory t in full all moneys due for books and lies not accounted for therein.

September 11, 1931, Doyle Book Store ered 'a statement to plaintiff showing deposits of cash received from sales September 1st to 9th of $1,602.92 enclosing remittance of $1,500 to plain- explaining a balance in bank of $102.92 left in the bank to cover insufficient ks that might have been received on . Thereafter, on September 28, 1931, e Book Store remitted $400 to plain- Thereafter, on October 2, 1931, an tory of books on hand was made by Doyle Book Store and figured by plain- showing total debits, goods on hand invoice of goods to that date, of $6,- 9, to be offset by inventory of goods and and remittances by checks paid ptember to plaintiff in the amount of .84, which report showed a balance plaintiff at that date of $232.55. No er remittances were made. There- inventory of goods on hand was made oyle Book Store on December 29, 1931, mailed to plaintiff, which showed a ce due plaintiff of $1,577.42. On Jan- 20, 1932, plaintiff sent a written notice fendant that Doyle Book Store was in lt in this amount. The following week iff recovered all unsold stock from Book Store and figured final settle- showing unremitted cash due by Book Store in the amount of $1,- , for which claim was made against efendant by plaintiff and suit there- led. Trial was had by the court, having been waived, and judgment

therefor was rendered, from which de- fendant appealed.

Although ten errors are assigned, all are presented under two propositions:

"(1) Said court erred in rendering judgment in said cause and overruling mo- tion of plaintiff for a new trial for the reason that the judgment of the court is contrary to law.

"(2) Said court erred in overruling the motion for a new trial."

It is urged that the judgment of the lower court is void and contrary to law for the reason that Doyle Book Store, prior to the execution of defendant's bond, was guilty of acts of moral turpitude; that plaintiff, with knowledge of these acts on a prior bond similar to defendants, with- held this information from it; that by reason of these acts of concealment by plaintiff, no liability accrued on defendant's bond.

The evidence discloses that Doyle Book Store, prior to the execution of defendant's bond, and while operating under bond and contract identical in terms to the con- tract and bond executed August 1, 1931, admitted an indebtedness of $2,119.51 to plaintiff. There is no evidence that Doyle Book Store converted said sum or any sum to its own use, although failure to perform its contract is admitted. From all the evidence it appears that said principal made correct statements of his accounts; that he did not conceal his alleged shortage. Section 9 of the contract reads in part as follows:

"And it is expressly agreed that the first party may at his discretion and without releasing said second party or any surety or sureties upon the bond hereto appended, extend the time of payment."

It is admitted that Doyle Book Store sold goods in violation of the contract of August 1, 1931, in that he did not always sell for cash, but accepted checks whose sufficiency was uncertain, yet there is no evidence of moral turpitude or fraudulent appropriation so convincing that the trial court could not hold otherwise.

"Moral turpitude" is defined as an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man. Words and Phrases (1st Series) vol. 5, p. 4580.

## 550

"Embezzlement" is the fraudulent appropriation of property by a person to whom it has been entrusted. Section 2037, O. S. 1931.

It is admitted that defendant did not at any time request plaintiff to give any information concerning prior dealings or conduct of principal.

In Chicago Crayon Co. v. Roger, 30 Okla. 299, 119 P. 630, the court among other things said:

"It is only where there is moral turpitude upon the part of the principal, as distinguished from a mere failure to perform his contract, that the duty is imposed upon the obligee to notify the surety. * * * See Home Insurance Co. v. Holway, 55 Iowa, 571. 8 N. W. 457. 39 Am. Rep. 179; Richmond & P. R. R. Co. v. Kasey, 30 Grat. (Va.) 218."

By signing the bond the sureties promised to make good the shortage of the principal. The obligee had the right to rely on the bond, and to continue to ship to its agent pictures and frames for delivery. The bond was given to secure it for shipments so made, and until something occurred which would justify the obligee in saying to the sureties the principal was a dishonest rascal, it was under no duty to say anything.

In the case of Star Ins. Co. v. Carey (California Insurance Co. v. Same), decided June 9, 1928 (Kan.) 267 P. 990, the second paragraph of the syllabus reads as follows:

"In an action by the obligee against the surety on a fidelity bond of a local recording insurance agent, where the obligee had no part in the matter of inducing the surety to sign the bond, the fact that the agent was behind time with his remittances of moneys belonging to his principal, the obligee of the bond, at the time the bond was required, and that the obligee did not volunteer to inform the surety of that fact. did not constitute a fraud upon the surety nor was such nondisclosure sufficient to release the surety from his obligation."

See, also, Magee v. Manhattan Life Ins. Co., 92 U. S. 93; Springfield Fire & Marine Ins. Co. v. Douglas, 174 Okla. 125, 49 P. (2d) 1073.

In the case of J. R. Watkins Co. v. Jennings, 131 Okla. 295, 269 P. 265, this court held in the second paragraph of the syllabus as follows:

"As a general rule, sureties on a contract are not entitled to notice of the default of their principal for whose act they are bound.

But where the principal on a continui contract is guilty of conduct indicating b faith, moral turpitude, or unfitness trust, of which the creditor has notice, is under obligation to notify the sureti and if he fails to give sureties notice, th are not bound for future advances. A the question of whether the principal guilty of such conduct, requiring notice be given, is a question of fact to be termined by the jury under proper instr tions, or by the court trying the case; a where there is any testimony reasona tending to support the finding of the co or jury, the same will not be disturbed this court on appeal."

In this case we find testimony reasona tending to support the view that there no fraud on the part of the obligee no acts of moral turpitude on the part the principal.

The second specification of error is ered by the authorities cited and clusions reached as above set out.

The judgment is affirmed.

OSBORN, C. J., and BUSBY, CORN, HURST, JJ., concur. BAYLESS, V. C. and RILEY, PHELPS, and GIBSON, absent.